In the Matter of the Application for DIS-CIPLINARY ACTION AGAINST the Honorable Bert L. WILSON, Judge of the District Court.

JUDICIAL CONDUCT COMMISSION OF the SUPREME COURT OF the STATE OF NORTH DAKOTA, Petitioner,

v.

The Honorable Bert L. WILSON, Judge of the District Court, State of North Dakota, Respondent.

Civ. No. 900167.

Supreme Court of North Dakota.

Oct. 2, 1990.

Vivian E. Berg (argued), Staff Counsel for Judicial Conduct Com'n, Bismarck, for petitioner.

Mark L. Stenehjem (argued), of Winkjer, McKennett, Stenehjem, Murphy & Reierson, Williston, for respondent.

ERICKSTAD, Chief Justice.

This is a disciplinary proceeding against the Honorable Bert L. Wilson, District Judge for the Northwest Judicial District. The Judicial Conduct Commission has recommended public censure. We dismiss the proceedings.

Judge Wilson presided over the divorce trial of Martha (Marty) Vallely and John Vallely, Jr. One of the couple's assets was a $28,000 promissory note from Vallely Marine, Inc. In Findings of Fact, Conclusions of Law, and Order for Judgment prepared by Judge Wilson, the note was awarded to Marty, but John was given the option of taking the note and paying Marty $28,000 plus interest over a five year period:

"Item 10 on the list is a figure of $28,-000.00 for a promissory note dated 11–18–86 maker being Vallely Marine, Inc. which was initially for the principal sum of $40,000.00. I have awarded this note to Marty. John has alleged and asked that I award that to him so that he may use it as security to extend his loans with the American State Bank, Williston. If no other arrangements can be made, at his option, he may substitute that item for $28,000.00 in cash payable to Marty over a period of five years at the rate of 6 percent amortized monthly. As security Marty shall have a lien on John's shares of stock in Vallely Truck Center, Inc. and Vallely Marine, Inc. If Marty receives this note as her share of the marital properties all amounts due thereunder and all interest accruing from and after this date shall be hers."

Marty's attorney, Carol Ronning Kapsner, drafted the judgment which was ultimately entered in the divorce action. The judgment also awards the note to Marty, with John having the option of substituting his personal obligation, but the language of the judgment differs significantly from that in Judge Wilson's findings and conclusions:

"Item 10 on the list is a figure of $28,-000.00 for a promissory note dated 11–18–86, the maker being Vallely Marine, Inc., which was initially for the principal sum of $40,000.00. This note is awarded to Marty. John shall assign this note to Marty, and all sums due thereon and all interest accruing after January 31, 1989, shall be hers. In lieu of an assignment of this promissory note, John may, at his election, substitute a personal promissory note for $28,000.00 payable to Marty over a period of five years at the rate of 6 percent amortized monthly. As security for payment of these sums, Marty shall have a lien on John's shares of stock in Vallely Truck Center, Inc. and Vallely Marine, Inc."

After judgment was entered, John went to his bank to discuss refinancing some of the marital debts. The bank raised a question concerning this provision of the judgment, specifically whether or not the lien on John's stock took effect only if he substituted his personal obligation for the corporate note. John contacted his attorney, Richard McKennett, seeking clarification. McKennett attempted to contact Kapsner, but she was unavailable.

McKennett then contacted Judge Wilson by telephone and asked what the provision meant. Because Judge Wilson did not have the file at hand, McKennett read the provision over the phone to Judge Wilson. Judge Wilson explained that he had intended that the lien take effect only if John substituted his personal obligation for the corporate note, and that Marty had no lien if she retained the corporate note. Judge Wilson also suggested that Kapsner be contacted, but McKennett informed him that she was unavailable.

McKennett prepared an order clarifying the judgment and an addendum to the judgment, and personally delivered them to Judge Wilson the next day. Believing that there was some urgency because of John's need to arrange refinancing, Judge Wilson signed the order. The Addendum to Judg-

ment, which was entered with the judgment, provides in pertinent part:

"It is the specific Judgment of this court that upon the assignment of that promissory note by John Duker Vallely, Jr., to the Plaintiff that shows as item ten on the itemized listing of the properties of the parties attached to the judgment that no security for that payment is due to the Plaintiff from the Defendant. It is the Judgment of this court that only in the event that the Defendant, John Duker Vallely, Jr., elects to substitute a personal promissory note in the amount of $28,000.00 payable to the Plaintiff over a period of five years at the rate of 6% amortized monthly would Defendant's shares of stock in Vallely Truck Center, Inc., and Vallely Marine, Inc., be required as security for that alternative."

Copies of the order and addendum were sent to Kapsner. She filed a motion to vacate the judgment and addendum and a motion for recusal or disqualification of Judge Wilson. The motions were denied. Marty did not file an appeal.[1]

Marty and Kapsner filed complaints with the Commission alleging that Judge Wilson had violated ethical rules by his ex parte communication with McKennett and amendment of the judgment without affording Marty an opportunity to be heard. The Commission instituted formal proceedings against Judge Wilson and Surrogate Judge Douglas Heen was appointed master. Judge Heen held an evidentiary hearing and filed findings of fact and conclusions of law determining that Judge Wilson

had committed no ethical violation and recommending dismissal of the charges.[2]

The Commission rejected the recommendation of the master. In its own findings of fact and conclusions of law, the Commission held that Judge Wilson had willfully violated Rule 3(A)(4), N.D.R.J.C. The Commission recommended public censure.

■■■ Section 27–23–03(3), N.D.C.C., empowers this Court, on the Commission's recommendation, to censure or remove a judge for action that constitutes a willful violation of the North Dakota Rules of Judicial Conduct. *See In re Schirado*, 364 N.W.2d 50, 52 (N.D.1985). Our review of the Commission's findings and recommendations is de novo on the record. *In re Schirado, supra*, 364 N.W.2d at 52; *In re Cieminski*, 270 N.W.2d 321, 326 (N.D. 1978). Although our review is de novo, we will accord due weight to the master's findings because the master had the opportunity to observe the demeanor of the witnesses. *In re Schirado, supra*, 364 N.W.2d at 52; *Judicial Qualifications Commission v. Cieminski*, 326 N.W.2d 883, 889 (N.D. 1982). Before a judge may be censured or removed, the charges must be established by clear and convincing evidence. *In re Schirado, supra*, 364 N.W.2d at 52; *In re Cieminski, supra*, 270 N.W.2d at 326.

■■■ Judge Wilson was charged with violating Rule 3(A)(4), N.D.R.J.C., which provides in pertinent part:

"(4) A judge shall accord to every person who is legally interested in a proceeding, or that person's lawyer, full right to be heard according to law, and,

---

1. Marty concedes that she has received payment in full on the corporate note.

2. Judge Heen's findings and conclusions state, in pertinent part:

"VIII.

"Capsuled, the long and the short of the facts of this proceeding are, that Kapsner in drafting the *Judgment* decided the lien/security provision of the Judge's *Conclusions* needed improving to say more specifically what she thought it said for her client's protection; so she added 5 words in her drafted *Judgment* to improve, she must have thought, upon the Judge's provision; the *Judgment* improved version proved to be uncertain in meaning; ■■■

the Judge learning of the uncertainty, deeming it 'clerical error' corrected the *Judgment* to correspond to the intended meaning of his *Conclusions* which under the authority cited the Court had the power *ex parte* to do.

"IX.

"It is concluded that Judge Wilson did not violate the strictures of the *Rules of Judicial Conduct*, Rule 3(A)(4) as charged in paragraph IV of the *Notice of Institution of Formal Proceedings*.

"X.

"It is further concluded that the allegations of paragraph V of the *Notice* are not proved by clear and convincing evidence."

except as authorized by law, neither initiate nor consider *ex parte* or other communications concerning the substance of a pending or impending proceeding."

The rule prohibits a judge from considering ex parte communications except as authorized by law. Judge Wilson argues that he was authorized by Rule 60(a), N.D.R. Civ.P., to consider McKennett's ex parte contact and to act on his own to amend the judgment to reflect his findings of fact and conclusions of law. Our prior caselaw demonstrates that we have allowed corrections to judgments similar to the one in this case, either upon the judge's own motion or after an ex parte communication, pursuant to Rule 60(a):

> "(a) *Clerical Mistakes.* Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversights or omission may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the Supreme Court, and thereafter while the appeal is pending may be so corrected with leave of the Supreme Court."

In *Gruebele v. Gruebele*, 338 N.W.2d 805 (N.D.1983), we applied Rule 60(a) in a factual situation similar to this case. Erna and Jacob Gruebele were divorced and the District Court of Burleigh County appointed a receiver to sell certain real estate owned by the parties, with the proceeds to be divided equally. The receiver advertised the property for sale with a reservation of mineral rights. Jacob was the successful bidder at the sale. Although the advertisements and bidding contemplated only a sale of the surface, the order confirming sale and the deed purported to convey all interest in the property, including the minerals, to Jacob. Erna's counsel contacted the court about the discrepancy which allowed Jacob to receive the minerals although he had bid only on the surface. The court issued an ex parte order declaring that Erna was the owner of one-half of the minerals.

Jacob commenced a quiet title action in the District Court of Hettinger County, asserting that he owned the minerals through the receiver's deed. The District Court of Hettinger County quieted title in Jacob and, on appeal, we reversed that court and held that the District Court of Burleigh County's ex parte order was proper under Rule 60(a) as a correction of an error of oversight or omission in the prior order confirming the sale. We discussed at length the application of Rule 60(a):

> "Rule 60(a) applies to the correction of errors that properly may be described as clerical *or* arising from oversight or omission. Erna contends that the District Court of Burleigh County confirmed the conveyance of the described real property to Jacob by oversight. The alleged oversight is that the order confirming the sale and the receiver's deed should have contained the reservation language of the advertisement.
>
> "Generally, Rule 60(a) can only be used to make the judgment or record speak the truth and cannot be used to make it say something other than what originally was pronounced.... We believe it clear that Rule 60(a) was not designed to affect substantive portions of a judgment or order, nor to act as a substitute for appeal.... The rule is appropriately utilized only for 'the correction of irregularities which becloud but do not impugn [the judgment].' ... The problem is essentially one of characterization.... It must be determined 'whether a substantive change or amendment was made or whether the amended conclusions and judgment were in the nature of corrections.' ...
>
> "A court may correct, pursuant to Rule 60(a), errors created by oversight or omission that cause the judgment to fail to reflect what was intended at time of trial.... However, Rule 60(a) is not a vehicle for relitigating matters that have already been litigated and decided, nor to change what has been deliberately done." *Gruebele, supra,* 338 N.W.2d at 811–812 (citations and footnotes omitted).

*See also Volk v. Volk*, 435 N.W.2d 690, 692 (N.D.1989); 11 Wright & Miller, Federal Practice and Procedure § 2854 (1973).

Because the bidding procedure, order confirming sale, and deed created a windfall to Jacob, we concluded that the court's intent to divide the property equally between Jacob and Erna had not been properly effectuated. Accordingly, we held that the court's ex parte order, which accomplished an equal distribution, was appropriate under Rule 60(a).

We cautioned, however, that it may have been preferable to proceed under Rule 60(b), N.D.R.Civ.P., with notice and a hearing:

> "In light of the analysis that we have made, although we would have preferred that change be made under Rule 60(b), N.D.R.Civ.P., we do not believe, under the circumstances of this case, a 60(b) motion procedure was required to correct what was an error arising from oversight." *Gruebele, supra*, 338 N.W.2d at 812.

In two subsequent cases, we have upheld the court's use of Rule 60(a) under similar circumstances but cautioned that use of the Rule 60(b) motion procedure is to be preferred.[3] *Production Credit Association of Mandan v. Obrigewitch*, 443 N.W.2d 304, 308–309 (N.D.1989); *Volk, supra*, 435 N.W.2d at 692.

As counsel for the Commission correctly points out, our prior cases in this area do not address the ethical ramifications for judges and attorneys involved in ex parte corrections of a judgment under Rule 60(a).[4] These cases do, however, demonstrate the types of corrections to judgments which we have in the past upheld, albeit at times reluctantly, under Rule 60(a). We must consider Judge Wilson's conduct against the backdrop of our earlier cases interpreting the rule.

In this case, McKennett contacted Judge Wilson regarding the apparent discrepancy between Judge Wilson's order for judgment and the judgment drafted by Kapsner. Our reading of the order and judgment supports Judge Wilson's conclusion that the judgment did not accurately reflect what he intended in his findings, conclusions, and order for judgment. Under these circumstances, our prior caselaw suggests that an ex parte order under Rule 60(a) was appropriate to make the judgment "speak the truth." *See Volk, supra*, 435 N.W.2d at 692; *Gruebele, supra*, 338 N.W.2d at 811; *see also Enderlin Farmers' Store Co. v. Witliff*, 56 N.D. 380, 384, 217 N.W. 537, 538 (1928); 11 Wright & Miller, Federal Practice and Procedure § 2854 (1973).

If this were a direct appeal from the amended judgment we might be inclined to abandon our prior leniency in this area and remand for notice and a hearing. This, however, is a disciplinary hearing against a judge for amending a judgment ex parte, a procedure seemingly authorized by our prior caselaw under Rule 60(a). Although we would not cite Judge Wilson's conduct as an example of how an error in a judgment should be corrected, and the more appropriate course of action would have been to require notice and a hearing, we do not believe his actions rise to the level of an ethical violation for which he should receive public censure. Under these circumstances we conclude that the record does not demonstrate by clear and convincing evidence that Judge Wilson willfully violated Rule 3(A)(4), N.D.R.J.C.

The formal proceedings against Judge Wilson are dismissed. Costs on this appeal are allowed to Judge Wilson.

LEVINE and GIERKE, JJ., concur.

---

3. We also note that a motion procedure, including notice and a hearing, may be employed under Rule 60(a) and we suggest that in the future to avoid accusations such as made in this case that notice and hearing procedure be employed.

4. Counsel for the Commission has not cited cases from any other jurisdiction directly addressing discipline of a judge for improper ex parte correction. of a judgment under Rule 60(a).

VANDE WALLE, Justice, concurring in the result.

I concur in the dismissal of the application for disciplinary action. I nevertheless continue to believe that "it stretches the intention" of Rule 60(a) to conclude that this was a clerical mistake or an error arising from oversight or omission which permitted the entry of a corrective order without notice. *See Gruebele v. Gruebele,* 338 N.W.2d 805, 813 (N.D.1983) (Vande-Walle, J., concurring specially).

Because of our previous decisions construing Rule 60(a), NDRCivP, it may be that judges and lawyers are of the impression that a variety of changes in judgments are possible without hearing or notice to the other party. If that is so, we increase the tension between Rule 60(a) and Rule 3(A)(4), NDRJC, and we do lawyers and judges no favor, for instances of a similar nature will continue to arise. I prefer a less expansive interpretation of Rule 60(a) even if that narrower interpretation results in what may be considered unnecessary notices and hearing. If there is *any* question as to whether or not a mistake is clerical a notice, if not a hearing, should be automatic.

However, I agree that we should not approve a recommendation which disciplines a judge or a lawyer for an action which a prior majority opinion of this Court appears to condone. Notwithstanding my conviction that a notice and, if necessary, a hearing should have been held prior to amending the judgment, I admit my concurrence in the result may be influenced by a further belief—predicated solely on my reading of the original order for judgment, and the order amending judgment—that the amendment only affirmed what Judge Wilson required in the order for judgment.

MESCHKE, Justice, concurring.

I concur in dismissal of this disciplinary action against Judge Wilson. I join in Justice VandeWalle's opinion that "it stretches the intention" of Rule 60(a) to authorize entry of a corrective order ex parte and without notice. I believe, however, that we should do more to clarify the reading of the rules that apply to this situation. For this purpose, I write separately.

I agree with the other opinions, too, that attorney Carol Ronning Kapsner manipulated Judge Wilson's language in order to change, to favor her client, an ambiguity in the judge's direction. What is not explained, though, is that Kapsner's change was done openly and with notice to adverse counsel.

Judge Wilson entered his findings, conclusions, and order for judgment on January 31, 1989. Attorney Kapsner submitted her proposed judgment, including this manipulation, to attorney McKennett on February 15. Kapsner and McKennett negotiated about several changes. Judge Heen determined that, "[i]n so negotiating, neither McKennett nor his client raised objection or voiced concern with or about" this manipulation by Kapsner. In the end, only a single, minor change in another part of the proposed judgment resulted from the negotiations. McKennett made that change by inserting an amended page in the original judgment that Kapsner had submitted on February 16 to the clerk of court "... directed to the judge's (sic) attention." Finally, on February 28, the judgment was signed and docketed by the clerk. This open process of entering the judgment puts the later one-sided change in a different light.

Ex parte means, "[o]n one side only; by or for one party; done for, in behalf of, or on the application of, one party only." Black's Law Dictionary 517 (5th ed. 1979). "An order is said to be ex parte when it is taken or granted at the instance and for the benefit of one party only and without notice to or contest by any person adversely interested." 56 Am.Jur.2d *Motions, Rules, and Orders* § 33 (1971).

*Ex parte* communications are those that involve fewer than all of the parties who are legally entitled to be present during the discussion of any matter. They are barred in order to ensure that "every person who is legally interested in a proceeding [is given the] full right to be heard according to law."

Lubet, *Ex parte communications: an issue in judicial conduct,* Judicature, Aug.–Sept. 1990, at 96 (footnotes omitted). By definition, ex parte judicial action is partial, not impartial.

> Impartial judicial action is the norm.
>
> *Ex parte* communications deprive the absent party of the right to respond and be heard. They suggest bias or partiality on the part of the judge. *Ex parte* conversations or correspondence can be misleading; the information given to the judge "may be incomplete or inaccurate, the problem can be incorrectly stated." At the very least, participation in *ex parte* communications will expose the judge to one sided argumentation, which carries the attendant risk of an erroneous ruling on the law or facts. At worst, *ex parte* communication is an invitation to improper influence if not outright corruption.

*Id.* at 96–97 (footnotes omitted). For good reasons, ex parte judicial action is generally forbidden.

The Rules of Judicial Conduct command a judge to "neither initiate nor consider *ex parte* or other communications concerning the substance of a pending or impending proceeding," unless "authorized by law." [1] NDRJC 3(a)(4). Judicial action at the instance of one party and without notice or opportunity for hearing to the other party is repugnant to fundamental principles of justice and due process. *McWethy v. McWethy,* 366 N.W.2d 796 (N.D.1985). A judge is expected to act impartially. NDRJC 3. A judge is expected to "avoid impropriety and the appearance of impropriety...." NDRJC 2. Except where plainly authorized by law, ex parte judicial action will appear to the public to be improper.

Correspondingly, ex parte communications by a lawyer with a judge about a pending matter are also restrained by rules. A lawyer is enjoined to "not ... seek to influence a judge ... by means prohibited by law including ex parte communications concerning a pending or impending proceeding." North Dakota Rules of Professional Conduct 3.5. Comments to those Rules emphasize the lawyer's obligation:

> Many forms of improper influence upon a tribunal are pr[o]scribed by criminal law. Others are specified in the North Dakota Rules of Judicial Conduct, with which an advocate should be familiar. A lawyer is required to avoid contributing to a violation of such provisions.

Rules of Professional Conduct, Comment to Rule 3.5. Another comment explains:

> [I]n an ex parte proceeding, such as an application for a temporary restraining order, there is no balance of presentation by opposing advocates. The object of an ex parte proceeding is nevertheless to yield a substantially just result. *The tribunal has an affirmative responsibility to accord the absent party just consideration.* The lawyer for the represented party has the correlative duty to make disclosures of material facts known to the lawyer and that the lawyer reasonably believes are necessary to an informed decision.

Rules of Professional Conduct, Comment to Rule 3.3 (my emphasis). A one-sided telephone call to a judge by a lawyer about a pending matter is improper unless authorized by law.

Judge Heen believed that the wording of this judgment was "the result of clerical mistake" and "was subject to *ex parte* correction by the Court's own initiative or by that of McKennett." The Judicial Conduct Commission determined otherwise:

XI.

The change that was made in the Judgment was not a clerical mistake. It was

---

1. Certain matters may be heard *ex parte,* as authorized by law. In civil cases these include emergency motions, such as requests for temporary restraining orders. In criminal cases, applications for search warrants and grand jury proceedings typically take place without the presence of the defendant. *Ex parte* judgments may be entered against parties who are in default, and, of course, a court may generally proceed where parties have had notice, but have failed to appear.
Lubet, *Ex parte communications: an issue in judicial conduct,* Judicature, Aug.–Sept. 1990, at 96, n. 2.

not made on Judge Wilson's own initiative or upon motion but was a result of *ex parte* communication with Attorney McKennett. . . .

## XII.

The position of Judge Wilson that the *ex parte* communication was acceptable as there was no pending proceeding or justified by exigent circumstances is rejected. These contrasting positions stem from loose and imprecise application of NDRCivP 60(a) in past decisions by this court. *See Gruebele v. Gruebele,* 338 N.W.2d 805 (N.D.1983) and *Enderlin Farmers' Store Co. v. Witliff,* 56 N.D. 380, 217 N.W. 537 (1928). I agree with Justice VandeWalle that "we do lawyers and judges no favor" to perpetuate the impression "that a variety of changes in judgments are possible without hearing or notice to the other party." As *Volk v. Volk,* 435 N.W.2d 690 (N.D.1989) and *Production Credit Association of Mandan v. Obrigewitch,* 443 N.W.2d 304 (N.D.1989) demonstrate, any change in a judgment can be made after notice and opportunity for hearing, as easily as before.

Does NDRCivP 60(a) authorize ex parte communications or ex parte judicial actions? Certainly not expressly. No such authorization should be implied.

NDRCivP 60(a) does not authorize either ex parte communications or judicial actions. It only authorizes correction of clerical mistakes and like errors "by the court . . . on its own initiative or on the motion of any party and after such notice, if any, as the court orders." When a change is brought about by a one-sided communication from a party, it is not the court's own initiative; it is ex parte. This is what the Rules of Judicial Conduct and Rules of Professional Conduct bar.

Nor should the language of Rule 60(a), "after such notice, if any, as the court orders," be taken as implicitly licensing ex parte judicial action. It does not, although it may permit judicial action without a hearing in a proper case. Compare the plain, but limited, authorization of ex parte judicial action in NDCC 32–06–07:

A restraining order, or an order to show cause in the nature of a restraining order, will not be issued ex parte or without a hearing, unless it shall be shown in the moving papers that there exists such an exigency or occasion as requires the immediate issuance of an order so that the rights of the parties may be preserved.

Rule 60(a) contains no comparable authorization for ex parte judicial action.

Some of the confusion in past decisions of this court seems to stem from misunderstandings about the scope of Rule 60(a). Only minor errors are envisioned by Rule 60(a). 6A Moore's Federal Practice ¶ 60.05 (1989). In exercising the power to correct clerical mistakes and oversights, courts should confine the power to those that may legitimately be said to be clerical, and exercise it only upon a clear showing. *Id.* at ¶ 60.06(3). "Where the error is not apparent on the face of the record, and evidence must be heard to ascertain whether or not there is in fact a clerical error, then the parties should be given notice and an opportunity to be heard." *Id.* at ¶ 60.07. Rule 60(a) is not the kind of rule that should be "stretched," like past decisions of this court have done.

Because of the confusion in our past decisions, I agree that Judge Wilson did not *willfully* violate the Rules of Judicial Conduct. But, I believe that the rules against ex parte communications and judicial actions in a pending matter were violated. After today's opinions, no judge or lawyer in North Dakota should be able to fairly claim a misunderstanding of the rules of conduct.

A postscript to Judge Heen's findings in this case says it well:

To engage in such informality in a pending action or proceeding can lead only to an impression of prejudice and bias and distress on the part of a party, absent or not, in this instance Martha and Attorney Kapsner, both sincerely believing Martha's rights and security were trampled and violated by occurrences in this case.

This should not happen again in North Dakota.