In the Matter of Disciplinary Action against the Honorable Lester J. Schirado, County Judge, Morton, Grant, and Sioux Counties.

### JUDICIAL QUALIFICATIONS COMMISSION, Respondent,

v.

### Lester J. SCHIRADO, Petitioner.

### Civ. No. 10839.

Supreme Court of North Dakota.

March 13, 1985.

Richard G. Carver, Vinje Law Firm, Bismarck, for petitioner.

Lester J. Schirado, pro se.

Vivian E. Berg, Staff Counsel, Judicial Qualifications Com'n, Bismarck, for respondent.

ERICKSTAD, Chief Justice.

This is a disciplinary proceeding against the Honorable Lester J. Schirado, Judge of the County Court of Morton, Grant, and Sioux Counties, pursuant to Section 12 of Article 6 of the North Dakota Constitution, Chapter 27–23, N.D.C.C., and the North Dakota Rules of Judicial Qualifications Commission (N.D.R.J.Q.C.).[1]

---

1. Section 12, Article 6 of the North Dakota Constitution provides as follows:

"The legislative assembly may provide for the retirement, discipline, and removal of judges. The removal procedure provided for herein may be used in addition to the impeachment proceedings provided for in article

The Commission on Judicial Qualifications (Commission) instituted formal proceedings against Judge Schirado after conducting a preliminary investigation of two separate complaints against him.[2] *See* Rule 6, N.D.R.J.Q.C. The Commission, through its staff counsel, served Judge Schirado with a Notice of Institution of Formal Proceedings specifying the charges against him and advising him of the right to file written answers to the charges within fifteen days. *See* Rule 8, N.D.R.J.Q.C. The charges in the notice alleged that Judge Schirado had violated Rules 2 A and 3 C(1)(a) and (b) of the North Dakota Rules of Judicial Conduct by hearing and deciding two Morton County small claims court cases (David Barth v. Lenny Gohl and Raymond Dockter v. Kenneth Thomas) after having represented David Barth and Lee Thomas in matters arising out of the same factual circumstances. Judge Schirado filed an answer generally denying the charges contained in the notice. *See* Rule 9, N.D.R.J.Q.C.

Upon request of the Commission, this Court appointed the Honorable Everett Nels Olson as Master to conduct a hearing in the proceedings and to report to the Commission. *See* Rule 10, N.D.R.J.Q.C. After conducting a hearing, Judge Olson prepared findings of fact and conclusions of law in which he concluded that Judge Schirado had violated Rules 2 A and 3 C(1)(a) and (b) of the North Dakota Rules of Judicial Conduct. Judge Olson recommended to the Commission that Judge Schirado receive a strict and public censure and that costs of the proceeding before the Commission be assessed against him.

Judge Schirado filed a statement of objections to the Master's report. *See* Rule 17, N.D.R.J.Q.C. After hearing oral argument from counsel for the Commission and counsel for Judge Schirado, the Commission adopted the findings of fact and con-

XI, sections 8, 9, and 10, and removal provided for in article XI, section 11."

Section 27–23–03, N.D.C.C., provides in part as follows:

"3. On recommendation of the commission, the supreme court may (a) retire a judge for disability that seriously interferes with the performance of his duties and is, or is likely to become, permanent; and (b) censure or remove a judge for action that constitutes willful misconduct in office, willful failure to perform his duties as prescribed by law or by administrative rule or regulation of the supreme court, willful violation of provisions of the code of judicial conduct as adopted by the supreme court, or habitual intemperance. No proceedings hereunder shall be instituted for alleged acts occurring more than six years prior to receiving a complaint.

\* \* \* \* \* \*

"5. The supreme court shall make rules implementing this chapter and providing for confidentiality of proceedings."

Pursuant to the authority of Section 27–23–03(5), N.D.C.C., this Court has adopted the North Dakota Rules of Judicial Qualifications Commission.

Rule 24, N.D.R.J.Q.C. provides as follows:

"(a) A petition to the Supreme Court to modify or reject the recommendation of the Commission for censure, removal, retirement, suspension, or other disciplinary action against a judge may be filed within 30 days after the filing with the Clerk of the Supreme Court of a certified copy of the recommendation complained of. The petition shall be verified, be based on the record, specify the grounds relied on, and be accompanied by the judge's brief and proof of service on the secretary of the Commission. At least 20 days before the return day the Commission shall serve upon the judge and file with the Clerk of the Supreme Court a responsive brief. Within 15 days after service of the Commission's brief the judge may file with the Clerk of the Supreme Court a reply brief which shall be served on the secretary of the Commission.

"(b) Upon failure to file a petition for review within the time provided, the Supreme Court shall consider the recommendation upon the record filed by the Commission and upon such further briefs or arguments the court may require.

"(c) The number, form and contents of briefs shall be in conformity with Rules 28 and 31, N.D.R.App.P."

Rule 25, N.D.R.J.Q.C., provides as follows:

"The Supreme Court shall review the record of the proceedings on the law and the facts and shall file a written opinion and judgment directing censure, removal, retirement, suspension, other disciplinary action or dismissal of the complaint as it finds just and proper, or the court may accept, reject or modify, in whole or in part, the recommendations of the Commission."

2. Lenny Gohl initiated one complaint. The Commission initiated the second complaint on its own motion during the course of the preliminary investigation of Gohl's complaint.

clusions of law of the Master, incorporated his recommendation as the recommendation of the Commission, and certified that recommendation to this Court. *See* Rule 23, N.D.R.J.Q.C. Judge Schirado then petitioned for review by this Court. *See* Rules 24 and 25, N.D.R.J.Q.C. (See fn. 1, *supra.*)

■ Pursuant to Section 27–23–03(3), N.D.C.C., the Supreme Court, on recommendation of the Commission, may censure or remove a judge for action that constitutes a willful[3] violation of provisions of the Code of Judicial Conduct. Before the Supreme Court may censure or remove a judge in a disciplinary proceeding, the charges must be established by clear and convincing evidence. *Matter of Cieminski,* 270 N.W.2d 321, 326 (N.D.1978); *see Judicial Qualifications Commission v. Cieminski,* 326 N.W.2d 883, 888 (N.D.1982).

■ This Court's review of findings and recommendations of the Commission is de novo on the record. *Judicial Qualifications Commission v. Cieminski, supra,* 326 N.W.2d at 885; *Matter of Cieminski, supra,* 270 N.W.2d at 326. Although our review is de novo on the record, we nevertheless must give due weight to the Master's findings because the Master had the opportunity to observe the demeanor of the witnesses. *Matter of Cieminski, supra,* 270 N.W.2d at 326.

With the foregoing principles in mind, we will examine the findings, conclusions, and recommendations made by the Master and adopted by the Commission, to determine whether the evidence clearly and convincingly establishes that Judge Schirado willfully violated Rules 2 A and 3 C(1)(a) and (b) of the North Dakota Rules of Judicial Conduct.

Rule 2 A provides as follows:

"A judge shall respect and comply with the law and shall act in such a manner that promotes public confidence in the integrity and impartiality of the judiciary."

Rule 3 C(1)(a) and (b) provides as follows:

"C. *Disqualification.*

"(1) A judge's disqualification is appropriate when the judge's impartiality might reasonably be questioned, including but not limited to instances where:

"(a) a judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

"(b) a judge served as lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it; ..."

In *Barth v. Gohl,* the Commission adopted the following findings of fact made by the Master:

"I.

"That on January 3, 1983, the Honorable Lester J. Schirado assumed his duties as County Judge for Morton, Grant, and Sioux Counties.

"II.

"That on October 11, 1982, an automobile accident occurred in the city of Mandan between two vehicles operated by David Barth and Leonard Gohl, resulting in damage to both vehicles.

"III.

"That on or before November 19, 1982, Lester J. Schirado, while still in the private practice of law, undertook to represent David Barth in connection with the October 11, 1982, accident. That specifically, on November 19, 1982, a letter was sent to Gohl by the Schirado Law Office threatening litigation if Barth's claim in the sum of $295.35 for damages sus-

---

**3.** The term "willfully," when used in disciplinary proceedings, means acts that were the performer's free will and were not done under coercion. *Matter of Cieminski,* 270 N.W.2d 321, 327 (N.D.1978).

tained in connection with the accident was not paid within five days.

## "IV.

"That the Barth claim was not paid and action was commenced through Morton County Small Claims Court on December 16, 1982, wherein Dave Barth appeared as Plaintiff and Lenny Gohl appeared as Defendant. The matter was scheduled for trial on January 12, 1983, at 10:30 a.m.

## "V.

"That at the time of the trial on January 12, 1983, at 10:30 a.m., the Honorable Lester J. Schirado undertook to preside over the above case and refused to disqualify himself. That during the course of the trial, Judge Schirado was reminded on three different occasions by Leonard Gohl that, as an attorney, Schirado had represented Barth on the same matter.

## "VI.

"That as trial judge the Honorable Lester J. Schirado, after refusing to disqualify himself, entered judgment against Gohl and in favor of Barth in the total sum of $300.35.

## "VII.

"That after entry of judgment on January 12, 1983, Judge Schirado advised Barth on steps to be taken in collecting his judgment against Gohl.

## "VIII.

"That after the trial of January 12, 1983, Leonard Gohl sought legal counsel and subsequently reported Judge Schirado's refusal to disqualify himself to the Judicial Qualifications Commission by a letter dated January 19, 1983. Leonard Gohl was notified for the first time by a letter dated January 19, 1983, from the office of Judge Schirado that Judge Schirado had disqualified himself and that the matter would be assigned to another judge. That on January 19, 1983, Judge Schirado wrote Presiding Judge Graff requesting that the matter be reassigned because Judge Schirado 'knew one of the parties'.

## "IX.

"That after reassignment of the matter of Morton County Small Claims No. 4600, judgment was entered in favor of Barth by Judge Schulz. Judge Schirado continued his involvement in the matter by directing his staff to reject Leonard Gohl's attempts to make partial payments on the Judgment."

Judge Schirado asserts that he learned of the letter he had written on behalf of Barth only when Gohl presented a copy of it to him after he had rendered a decision in the case. Judge Schirado contends that he immediately vacated the judgment and notified Barth and Gohl that he had disqualified himself. Judge Schirado further contends that the one-week delay in tendering the disqualification papers to presiding District Judge Benny Graff was because of an unfamiliarity with the paperwork for the disqualification procedure and because of the extraordinary backlog of cases left by his predecessor.

Gohl testified as follows concerning when Judge Schirado disqualified himself:

"And after we sat there a while, I asked him—I said, 'Are you the same Mr. Schirado who is representing this man?' And he didn't answer me. And I asked him three times, and then he told me—he said, 'It doesn't make any difference. This is the law.' And I was very upset about that."

Barth testified as follows:

"Well, we—Mr. Gohl and I had both stated our facts on what had happened in the accident and how the judgment should be paid and the damages and things like that. And Mr. Schirado had a book of codes or whatever he had in front of him, and he had read the law to both Lenny Gohl and I, stating how the

accident had happened and why the damages should go to me and why they should be paid, and things like this. And at that time, why, Lenny Gohl had stood up in the courtroom and asked Lester Schirado, the Judge—he asked if he was Judge Lester Schirado, and he said, 'Yes, I am.' And at that time he said, 'I can't understand why—how a man can be one man's attorney and yet be his judge to hear the same case.' He said, 'I haven't got a chance.' And at that time Judge Lester Schirado said, 'Yes, I am Lester Schirado.' And he said, 'That doesn't make any difference who would hear the case. The law is the law.'"

Both Barth and Gohl testified that, when they left the January 12 trial, the decision was in Barth's favor. Barth also testified that, after Gohl left the courtroom on January 12, he talked with Judge Schirado about getting payment for the judgment.

Judge Schirado contends that the file in the small claims case substantiates his position that he immediately disqualified himself. We have examined the documents in the small claims court file in *Barth v. Gohl*. The documents and inferences which can be drawn therefrom are not conclusive. There are notations on several documents which could support Judge Schirado's contentions or the Master's findings. However, the documents in the small claims file coupled with the testimony of Gohl and Barth supports the Master's finding that Judge Schirado did not immediately disqualify himself at the January 12, 1983, trial.

Based on our de novo review of the record and giving due weight to the Master's findings of fact, we believe the evidence clearly and convincingly establishes that Judge Schirado did not immediately disqualify himself when he was presented with facts of his prior representation of Barth in the same matter.

In *Dockter v. Thomas*, the Commission adopted the following findings of fact made by the Master:

"X.

"That sometime prior to December 1, 1982, Lester J. Schirado, while still in the private practice of law, undertook to represent Lee Thomas concerning a traffic charge in Mandan Municipal Court arising out of a traffic accident in the City of Mandan on November 10, 1982. Specifically, a letter was written on December 1, 1982, to the City Prosecutor detailing Lee Thomas' version of the accident. The letter was written with the authorization of Lester J. Schirado.

"XI.

"That on December 21, 1982, Lester J. Schirado again contacted the City Prosecutor by letter enclosing statements by both Lee Thomas and his passenger detailing their version of the accident. The December 21 letter summarized the gist of a December 13 telephone conversation between Schirado and the Mandan City Prosecutor. On December 21, the Municipal Court trial date involving Lee Thomas was continued from December 22 to January 5, 1983, at the request of Lester J. Schirado. That another letter was written on behalf of Lee Thomas on December 29, 1982, by the Schirado Law Office, which letter was directed to the Mandan City Prosecutor. Finally, on January 4, 1983, the Lee Thomas trial was continued from January 5 to January 26 at the telephone request on January 3 of Judy McDowell on behalf of now County Judge Schirado.

"XII.

"That on January 19, 1983, at 10:00 a.m., a trial was held in Morton County Small Claims Court wherein Raymond Dockter was seeking to recover damages from Kenneth Thomas, the father of Lee Thomas. That the claim for damages arose out of the accident of November 10, 1982, involving Lee Thomas.

"XIII.

"That at the outset of the hearing, Judge Schirado informed the litigants that he had been approached by one of the parties for legal representation. However, Judge Schirado failed to inform the parties as to his prior legal representation of Lee Thomas in Mandan Municipal Court as to traffic charges arising out of the November 10 accident. Finally, Judge Schirado failed to immediately disqualify himself from the Small Claims Court matter which arose out of the same factual setting."

After hearing the case, Judge Schirado found that Lee Thomas and the driver of the Dockter automobile, Dorreen Dockter, were each fifty-percent negligent in the automobile accident. Thus, neither side recovered damages and the case was dismissed.[4]

Judge Schirado contends that, at the beginning of the trial *Dockter v. Thomas*, he informed the parties that he had represented and written letters on behalf of Lee Thomas and, in spite of this information, the parties asked Judge Schirado to hear the case.

Raymond Dockter's wife, Patricia, testified as follows concerning the nature of disclosure by Judge Schirado:

"He said right at the beginning that the Thomases had approached him for legal counsel, and he told us that we had the right for a different judge if we wanted to."

Patricia Dockter further testified that she did not learn that Judge Schirado had written letters on behalf of Lee Thomas until the Commission began its investigation of the complaints against Judge Schirado.

The Master found that Judge Schirado informed the litigants that he had been approached by one of the parties for legal representation, but that he failed to inform the parties of his prior representation of Lee Thomas as to the traffic charges arising out of the accident. A vast difference exists between being approached for legal counsel and actually representing and writing letters on behalf of a client.

Based on our de novo review of the record and giving due weight to the Master's findings of fact, we believe the evidence clearly and convincingly establishes that Judge Schirado did not inform the parties, and particularly the Dockters, of his prior representation of Lee Thomas in the traffic charges arising out of the accident.

Judge Schirado concedes that there may have been some impropriety in not disqualifying himself and that with hindsight he probably should have withdrawn from the case immediately. However, Judge Schirado contends that the failure to disqualify himself was attributable to a recent bout with meningitis which clouded his judgment and to a large backlog of cases caused by his predecessor's abandonment of the office in November 1982.[5]

■ In *Disciplinary Board v. Amundson*, 297 N.W.2d 433, 443 (N.D.1980), we stated that a heavy workload in conjunction with personal problems did not justify the failure to attend matters entrusted to an attorney's care. We are not aware of any reason why that statement should not be applicable to judges.

In *Matter of Cieminski, supra*, 270 N.W.2d at 327, we made the following statement:

"Judges hold a unique position of administering justice. They symbolize the law and justice and, consequently, their action and behavior will reflect favorably

---

4. During oral argument before this Court, we were informed that the judgment in *Dockter v. Thomas* had not been vacated. Based upon our decision in this proceeding, Raymond Dockter may be entitled to a new trial on the merits upon proper application to vacate the judgment. See *First National Bank of Rapid City v. McCarthy*, 83 N.W. 423 (S.D.1900).

5. Because Judge Schirado's predecessor was on vacation during December 1982, this Court on December 23, 1982, entered a nunc pro tunc order assigning the Honorable Thomas J. Schneider to hear cases as necessary in the Morton County Court with Increased Jurisdiction. *See* Supreme Court Change of Judge Register, File No. 4421.

or unfavorably on the integrity of the judiciary and the high respect required in the administration of justice. The following comment attributed to a former judge, who heard it from his predecessor, is appropriate here.

" 'It is not merely sufficient to do justice but the public and society must have good cause and reason to believe that justice, in fact, is being done.' "Whatever the source of this statement, it has merit. We are also convinced that the Canons of the Code of Judicial Conduct were designed and adopted to accomplish this, as well as to require that the judge not only act impartially but also that the litigants and society believe that the judge did, in fact, act impartially. Any action or behavior of a judge which will destroy the public confidence in the integrity and impartiality of the judiciary will tend to cause disrespect for the law itself."

We are cognizant of the backlog of cases facing Judge Schirado when he took office in January 1983, and his bout with meningitis. However, we cannot condone the conduct of Judge Schirado. Judge Schirado's conduct has caused a loss of respect and public confidence in the judicial system. The public confidence in the integrity and impartiality of the judiciary has been eroded.

■ We conclude that the evidence clearly and convincingly establishes that Judge Schirado's conduct constituted a willful violation of Rules 2 A and 3 C(1)(a) and (b) of the Rules of Judicial Conduct. We agree with the Commission's conclusion that disciplinary action against Judge Schirado is warranted.

We conclude that a public censure is warranted and that Judge Schirado should be assessed costs of the formal proceedings, excluding the salary of staff but including the costs of any transcripts. *See Matter of Cieminski*, 270 N.W.2d at 332; *Matter of Walton*, 251 N.W.2d 762, 764 (N.D.1977); *Matter of Pohlman*, 248 N.W.2d 833, 837 (N.D.1977).

■ This opinion shall constitute that public censure. The amount of the cost is to be determined by the chairperson of the Commission. The chairperson of the Commission may authorize the payment of costs in one payment, or in equal installments within one year. If payments are made in installments, the rate of interest shall be at 12% per annum which is the allowable rate for interest after judgment under § 28–20–34, N.D.C.C. It is further ordered that Judge Schirado submit written evidence of payment, or written evidence that the chairperson has authorized payment in equal installments, to the Clerk of this Court within 30 days of the services of the billing.

This opinion may be utilized by Raymond Dockter should he decide to make a motion to vacate the judgment in *Dockter v. Thomas*. If he does make such a motion, we hereby direct that the Honorable Benny A. Graff, Presiding Judge of the South Central Judicial District, designate another county judge to hear that motion.

To inform the interested parties, the Clerk of this Court, Luella Dunn, is requested to mail a copy of this opinion to Raymond Dockter, Kenneth Thomas, David Barth, and Lenny Gohl.

GIERKE, VANDE WALLE, LEVINE and MESCHKE, JJ., concur.