2014 ND 33

In the Matter of the Application for DISCIPLINARY ACTION AGAINST Richard L. HAGAR, Judge of the District Court

**Judicial Conduct Commission, Petitioner**

v.

**Richard L. Hagar, Respondent.**

**No. 20130278.**

Supreme Court of North Dakota.

Feb. 13, 2014.

Kara J. Johnson, Bismarck, N.D., for petitioner.

Richard L. Hagar, Judge of the District Court, Minot, N.D., respondent; self-represented.

**PER CURIAM.**

[¶ 1] Richard L. Hagar, judge of the district court for the North Central Judicial District, filed exceptions to the Judicial Conduct Commission's recommended findings that he violated provisions of the Code of Judicial Conduct by failing to diligently and promptly decide judicial matters assigned to him. He also objects to the Commission's recommended sanctions. We adopt the Commission's findings of fact regarding Judge Hagar's violations of the Code of Judicial Conduct because they are supported by clear and convincing evidence. We order that Judge Hagar be suspended from his position as district judge for one month without pay commencing April 1, 2014, and assess against him $3,710.49 for the costs and attorney fees necessary for the prosecution of these proceedings.

I

[¶ 2] Judge Hagar began serving as a district court judge on January 1, 2007. On January 18, 2012, this Court, in *Judicial Conduct Commission v. Hagar*, 2012 ND 19, ¶ 6, 810 N.W.2d 338, censured Judge Hagar for violating N.D.Code Jud. Conduct Canon 3(B)(1), which provided "[a] judge shall hear and decide matters assigned to the judge except those in which disqualification is required," and N.D.Code Jud. Conduct Canon 3(B)(8), which provided "[a] judge shall dispose of all judicial matters promptly, efficiently and fairly." That disciplinary proceeding involved 12 cases which had not been promptly decided despite the presiding judge's having removed Judge Hagar from new case assignments for 30 days so he could devote himself to bringing his docket current. *Hagar*, at ¶ 2. The delays between trials and decisions ranged between six and 21 months. *Id.* The affidavit of consent and agreement we adopted included Judge Hagar's written plan for meeting docket currency standards. *Id.* at ¶ 5. The plan envisioned Judge Hagar's use of Odyssey case management system reports and "better use of current court staff" to meet those standards.

[¶ 3] On January 26, 2012, eight days after our issuance of the *Hagar* decision, Judge Hagar began presiding over a two-day divorce trial in the case of *Block v. Block*, Civil Case No. 51–10–C–02045. Because the parties had agreed to the divorce and to the division of marital property, the central remaining disputed issue in the

case was the primary residential responsibility for the parties' two children. During the ensuing months, the plaintiff's attorney contacted district court personnel on several occasions to check the status of the decision. After three months had passed, the attorney sent correspondence to the court again asking about the status of the decision. Judge Hagar's court reporter responded that the judge anticipated the decision would be completed by May 23, 2012. After another four months passed without receiving a decision, the attorney on September 22, 2012, sent a letter to Judge Hagar inquiring about the status of the case and the need for a determination of the primary residential responsibility for the children and the necessity of placing the property settlement on the record. After receiving no response from Judge Hagar, the attorney on November 8, 2012, sent a letter to the presiding judge of the district informing him about the problems obtaining a decision in the *Block* case. Judge Hagar thereafter issued a decision, and a divorce judgment was entered on November 16, 2012, almost ten months after the trial.

[¶ 4] On the basis of a complaint by the plaintiff in the *Block* case, the Commission brought formal charges against Judge Hagar, claiming he had again violated N.D.Code Jud. Conduct Canons 3(B)(1) and 3(B)(8). Because his conduct occurred before and after the new Code of Judicial Conduct became effective on July 1, 2012, Judge Hagar was also charged with violating N.D.Code Jud. Conduct Rule 2.7, which provides "[a] judge shall hear and decide matters assigned to the judge, except when disqualification is required," and N.D.Code Jud. Conduct Rule 2.5(A), which provides "[a] judge shall perform judicial and administrative duties competently and diligently." Following a hearing at which Judge Hagar, his court reporter, and the plaintiff's attorney in the *Block* case testi-

fied, the Commission found Judge Hagar violated these provisions of the Code of Judicial Conduct and recommended that he be suspended for one month and that he pay the costs and attorney fees associated with the disciplinary proceedings.

## II

[¶ 5] In *Judicial Conduct Commission v. McGuire*, 2004 ND 171, ¶ 6, 685 N.W.2d 748, this Court explained:

On the recommendation of the Commission or its hearing panel, this Court may censure or remove a judge from office for a willful violation of the Code of Judicial Conduct. *See* N.D.C.C. § 27–23–03(3); *Judicial Conduct Comm'n v. Hoffman*, 1999 ND 122, ¶ 5, 595 N.W.2d 592; *Judicial Conduct Comm'n v. Grenz*, 534 N.W.2d 816, 817 (N.D.1995); *Judicial Qualifications Comm'n v. Schirado*, 364 N.W.2d 50, 52 (N.D.1985). The term "willfully," when used in disciplinary proceedings against a judge, means acts that "were the performer's free will and were not done under coercion." *Judicial Qualifications Comm'n v. Cieminski*, 270 N.W.2d 321, 327 (N.D.1978); see also *Judicial Qualifications Comm'n v. Cieminski*, 326 N.W.2d 883, 886 n. 8 (N.D.1982). Before we may censure or remove a judge in a disciplinary proceeding, the charges must be established by clear and convincing evidence. *Schirado*, 364 N.W.2d at 52; *Cieminski*, 270 N.W.2d at 326. We review the Commission's findings and recommendations de novo on the record. *Hoffman*, 1999 ND 122, ¶ 5, 595 N.W.2d 592; *Grenz*, 534 N.W.2d at 817–18. Although our review is de novo, we accord due weight to the hearing body's findings because the hearing body had the opportunity to observe the demeanor of the witnesses. *Grenz*, 534

N.W.2d at 818; *Schirado*, 364 N.W.2d at 52.

[¶ 6] Judge Hagar devotes most of his brief to this Court defending his decision in the *Block* divorce case. The Commission found "there may have been errors in the findings made by the judge, caused by the delay in issuing findings after trial, including references to the religion of the parties, the location of the parties, information concerning health issues and information concerning possible violence." The Commission, however, has maintained throughout these proceedings that it is not asserting the contents of Judge Hagar's decision violated the Code of Judicial Conduct. Therefore, we do not consider this finding by the Commission in our assessment of Judge Hagar's conduct.

[¶ 7] The record clearly and convincingly establishes that despite the written plan for meeting docket currency standards and repeated urgings for disposition of the *Block* case, Judge Hagar did not issue a decision for nearly 10 months after the trial. Indeed, Judge Hagar does not challenge the Commission's findings that he violated the Code of Judicial Conduct and admits "I still cannot excuse, nor justify, my failure to comply with the expected standards regarding diligence and promptness in this case." We conclude there is clear and convincing evidence that Judge Hagar violated former N.D.Code Jud. Conduct Canons 3(B)(1) and 3(B)(8), and current N.D.Code Jud. Conduct Rules 2.5(A) and 2.7.

## III

[¶ 8] In *McGuire*, 2004 ND 171, ¶ 33, 685 N.W.2d 748, this Court listed factors to consider in imposing sanctions for violations of the Code of Judicial Conduct:

To determine the appropriate sanction, we consider the following nonexclusive factors: (a) whether the misconduct is an isolated instance or evidenced a pattern of conduct; (b) the nature, extent and frequency of occurrence of the acts of misconduct; (c) whether the misconduct occurred in or out of the courtroom; (d) whether the misconduct occurred in the judge's official capacity or in his private life; (e) whether the judge has acknowledged or recognized that the acts occurred; (f) whether the judge has evidenced an effort to change or modify his conduct; (g) the length of service on the bench; (h) whether there have been prior complaints about this judge; (i) the effect the misconduct has upon the integrity of and respect for the judiciary; and (j) the extent to which the judge exploited his position to satisfy his personal desires.

. . . .

With respect to mitigating factors, we generally are mindful that a matter represents the first complaint against a judge, of the length and good quality of the judge's tenure in office, of exemplary personal and professional reputation, of sincere commitment to overcoming the fault, of remorse and attempts at apology or reparations to the victim. We have also found relevant consideration of whether a judge found guilty of misconduct will engage in similar misconduct in the future, or whether the inappropriate behavior is susceptible to modification.

(Internal citations omitted).

[¶ 9] Judge Hagar has been a district court judge for seven years and has been censured for similar conduct in the past. Although this proceeding involves an unreasonable delay in only one case as compared to the 12 delays involved in the prior disciplinary proceeding, it occurred in close proximity to Judge Hagar's censure. The record supports the Commis-

sion's finding that "there was detriment to the plaintiff [in *Block*] from the delay with regard to housing of the children and receipt of property." Judge Hagar's conduct has tarnished the integrity of and respect for the judiciary as evidenced by the refusal of the plaintiff in *Block* to consider appealing the decision because, according to her attorney, "by that point she was so absolutely, totally disgusted with the system." Judge Hagar offered no excuse for his failure to act diligently on the *Block* case.

[¶ 10] Judge Hagar has shown remorse and a willingness to modify his conduct. However, contrary to Judge Hagar's written plan for meeting docket currency standards adopted in the prior disciplinary proceeding, the record indicates he did not adequately use Odyssey reports or his court staff to remedy the situation. Judge Hagar objects to imposition of a suspension as a sanction because of the "burden" it would impose on his colleagues and the citizens of the state. He offers no alternative recommendation. Judge Hagar cannot escape discipline merely because of its effect on the judicial system and his fellow judges.

[¶ 11] This Court's disciplinary orders are not intended to be "'empty noise.'" *Disciplinary Board v. Lucas,* 2010 ND 187, ¶ 18, 789 N.W.2d 73 (quoting *Disciplinary Board v. Larson,* 512 N.W.2d 454, 455 (N.D.1994)). The censure issued in the previous disciplinary proceeding did not deter Judge Hagar from repeating his improper conduct. Under N.D.C.C. § 27–23–03(3) and R. Jud. Conduct Comm. 8(B), this Court may suspend a judge without pay for a violation of the Code of Judicial Conduct. *See Cieminski,* 326 N.W.2d at 884 (three-month suspension without compensation for repeated violations). We agree with the Commission that a one-month suspension is appropriate under the circumstances of this case. Although the Commission recommended the suspension be served without "net" pay, we order that the suspension be served without pay, and further order that Judge Hagar pay the costs and attorney fees necessary for prosecution of these proceedings.

IV

[¶ 12] We conclude there is clear and convincing evidence Judge Hagar violated former N.D.Code Jud. Conduct Canons 3(B)(1) and 3(B)(8) and current N.D.Code Jud. Conduct Rules 2.5(A) and 2.7. We order that Judge Hagar be suspended from his position as district judge for one month without pay commencing April 1, 2014, and assess against him $3,710.49 for the costs and attorney fees necessary for the prosecution of these proceedings.

[¶ 13] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, S.J., DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.

[¶ 14] The Honorable LISA FAIR McEVERS was not a member of the Court when this case was heard and did not participate in this decision. Surrogate Judge MARY MUEHLEN MARING, sitting.