2017 ND 64

**In the MATTER OF the Application for DISCIPLINARY ACTION AGAINST Richard L. HAGAR, Judge of the District Court**

**Judicial Conduct Commission, Petitioner**

v.

**Richard L. Hagar, Respondent**

No. 20160283

Supreme Court of North Dakota.

Filed 03/30/2017

See also 810 N.W.2d 338; 842 N.W.2d 873.

Kara J. Erickson (argued) and Ryan A. Heintz (on brief), P.O. Box 2297, Bismarck, N.D. 58502–2297, for petitioner.

Richard L. Hagar, self-represented, P.O. Box 5005, Minot, N.D. 58702–5005, respondent.

SUSPENSION ORDERED

Per Curiam.

[¶ 1] Richard L. Hagar, judge of the district court for the North Central Judicial District, filed exceptions to the Judicial

Conduct Commission's recommended findings that he violated provisions of the Code of Judicial Conduct by failing to diligently and promptly decide judicial matters assigned to him and by failing to work with the presiding judge. He also objects to the Commission's recommended sanction. We conclude there is clear and convincing evidence Judge Hagar violated N.D. Code Jud. Conduct Rules 2.5 and 2.7. We order that Judge Hagar be suspended from his position as district court judge for three months without pay and that he be assessed $10,118.67 for the costs and expenses of the disciplinary proceedings.

I

[¶ 2] Judge Hagar began serving as a district court judge on January 1, 2007. In 2012, this Court censured Judge Hagar for violating N.D. Code Jud. Conduct Canon 3(B)(1), which provided "a judge shall hear and decide matters assigned to the judge except those in which disqualification is required," and N.D. Code Jud. Conduct Canon 3(B)(8), which provided "a judge shall dispose of all judicial matters promptly, efficiently and fairly." In re Disciplinary Action Against Hagar, 2012 ND 19, ¶ 6, 810 N.W.2d 338 ("Hagar I"). That disciplinary proceeding involved 12 cases which had not been promptly decided despite Judge Hagar being removed from new case assignments for 30 days so he could devote himself to bringing his docket current. Id. at ¶ 2. The affidavit of consent and agreement we adopted included Judge Hagar's written plan and agreement for promptly deciding cases. Id. at ¶ 5. The plan envisioned Judge Hagar's use of Odyssey electronic case management system reports and "better use of current court staff" to meet those standards.

[¶ 3] In 2014, this Court suspended Hagar from his position as district court judge for one month without pay for violating former N.D. Code Jud. Conduct Canons 3(B)(1) and 3(B)(8) and current N.D. Code Jud. Conduct Rules 2.5(A) and 2.7 by failing to diligently and promptly decide judicial matters assigned to him. In re Disciplinary Action Against Hagar, 2014 ND 33, ¶ 12, 842 N.W.2d 873 ("Hagar II"). We held Judge Hagar violated the rules because he did not issue a decision in a divorce case until nearly 10 months after the trial. Id. at ¶ 7. We noted Judge Hagar failed to issue a decision in a timely manner despite having a written plan to meet docket currency standards and repeated requests for disposition of the case. Id.

[¶ 4] On June 18, 2015, Judicial Conduct Commission brought the present formal charges against Judge Hagar, alleging he violated N.D. Code Jud. Conduct Rules 2.5 and 2.7 by failing to diligently and promptly hear and decide matters assigned to him and failing to cooperate with other judges and court officials. The allegations involved Judge Hagar's handling of seven cases. The disciplinary counsel alleged Judge Hagar failed to timely issue opinions after trials in four cases, failed to take any action on an application for an ex parte order in one case, and failed to issue opinions in a timely manner on motions to suppress in two cases.

[¶ 5] After a hearing, a hearing panel of the Commission found Judge Hagar willfully violated N.D. Code Jud. Conduct Rules 2.5(A) and (B) and 2.7. The hearing panel noted docket currency standards were exceeded in five of the seven cases, the presiding judge issued a series of letters putting Judge Hagar on notice of cases with potential docket currency problems, Judge Hagar did not respond to the letters and did not explain to the presiding judge why cases were taking longer than applicable time standards or request a modification in his responsibilities, and Judge Hagar did not "decide" two cases

assigned to him. The hearing panel recommended Judge Hagar be suspended for three months without pay, he be required to attend a course on "Decision Making" offered by the National Judicial College, he be required to bring all of his cases "docket current" within 90 days of returning to the bench, he learn how he can use the Odyssey system to stay compliant with the docket currency standards, and he pay the costs of the disciplinary proceedings in the amount of $10,118.67.

## II

[¶ 6] In In re Disciplinary Action Against McGuire, 2004 ND 171, ¶ 6, 685 N.W.2d 748, we explained our standard for reviewing the Commission's findings and recommendations:

On the recommendation of the Commission or its hearing panel, this Court may censure or remove a judge from office for a willful violation of the Code of Judicial Conduct. See N.D.C.C. § 27-23–03(3); Judicial Conduct Comm'n v. Hoffman, 1999 ND 122, ¶ 5, 595 N.W.2d 592; Judicial Conduct Comm'n v. Grenz, 534 N.W.2d 816, 817 (N.D.1995); Judicial Qualifications Comm'n v. Schirado, 364 N.W.2d 50, 52 (N.D.1985). The term "willfully," when used in disciplinary proceedings against a judge, means acts that "were the performer's free will and were not done under coercion." Judicial Qualifications Comm'n v. Cieminski, 270 N.W.2d 321, 327 (N.D.1978); see also Judicial Qualifications Comm'n v. Cieminski, 326 N.W.2d 883, 886 n. 8 (N.D. 1982). Before we may censure or remove a judge in a disciplinary proceeding, the charges must be established by clear and convincing evidence. Schirado, 364 N.W.2d at 52; Cieminski, 270 N.W.2d at 326. We review the Commission's findings and recommendations de novo on the record. Hoffman, 1999 ND 122, ¶ 5, 595 N.W.2d 592; Grenz, 534 N.W.2d at

817–18. Although our review is de novo, we accord due weight to the hearing body's findings because the hearing body had the opportunity to observe the demeanor of the witnesses. Grenz, 534 N.W.2d at 818; Schirado, 364 N.W.2d at 52.

## III

[¶ 7] Rule 2.5, N.D. Code Jud. Conduct, provides the rules related to competence, diligence, and cooperation, and states:

A. A judge shall perform judicial and administrative duties competently and diligently.

B. A judge shall cooperate with other judges and court officials in the administration of court business.

The comment to Rule 2.5 states:

[2] A judge should seek the necessary docket time, court staff, expertise, and resources to discharge all adjudicative and administrative responsibilities.

[3] Prompt disposition of the court's business requires a judge to devote adequate time to judicial duties, to be punctual in attending court and expeditious in determining matters under submission. . . .

[4] In disposing of matters promptly and efficiently, a judge must demonstrate due regard for the rights of parties to be heard and to have issues resolved without unnecessary cost or delay. A judge should monitor and supervise cases in ways that reduce or eliminate dilatory practices, avoidable delays, and unnecessary costs.

Rule 2.7, N.D. Code Jud. Conduct, requires a judge to hear and decide matters assigned to the judge.

[¶ 8] Judge Hagar admits he did not comply with docket currency standards but he claims there was not clear and

convincing evidence he lacked diligence in performing his required duties and there was no evidence he failed to cooperate with the presiding judge. He specifically objects to the Commission's conclusions of law related to two cases, Aberle v. Aberle and Ballou v. Platz.

[¶ 9] In Aberle v. Aberle, a divorce trial was held on July 9–10, 2013. The parties moved to reopen the record on October 19, 2013. The record was reopened after a hearing, and Judge Hagar indicated he would reserve his decision on the property and debt division until after an evidentiary hearing. On December 9, 2013, a partial judgment granting the divorce was entered. On May 15, 2014, the court held an evidentiary hearing. In an August 19, 2014, letter to Judge Hagar, the presiding judge of the North Central Judicial District expressed his concern about the delinquency of the case. The remaining issues were not decided until approximately 13 months after the trial and more than 90 days after the evidentiary hearing when the parties reached a stipulation in late August 2014, settling property rights, spousal support, parenting time, and child support matters. A judgment, incorporating the parties' settlement agreement, was entered on September 3, 2014.

[¶ 10] On August 14, 2014, in Ballou v. Platz, Platz applied for an ex parte order compelling return of the parties' child to his care, alleging he has primary residential responsibility for the child and Ballou was refusing to return the child after extended parenting time over the summer. Judge Hagar did not take any action on the application. In a September 12, 2014, letter to Judge Hagar, the presiding judge informed Judge Hagar that Platz filed a demand for a change of judge and it was granted. The presiding judge advised Judge Hagar that this was the third case that had been brought to his attention in less than one month for Judge Hagar's failure to promptly issue a decision and he warned Judge Hagar that at some point he would be required to inform disciplinary counsel of these complaints.

[¶ 11] The evidence clearly and convincingly shows Judge Hagar failed to issue a decision in the Aberle case for thirteen months after the divorce trial was completed despite receiving a letter from the presiding judge expressing concern about the delinquency of the case. Docket currency standards direct a judgment in a civil case to be entered within 90 days of the end of the trial. N.D. Sup. Ct. Admin. R. 12(2)(a)(1). Although the parties moved to reopen the record after the trial, Judge Hagar had already exceeded docket currency standards for entry of a judgment and a judgment was not entered until the parties reached a stipulation to settle the matter. Judge Hagar failed to provide any explanation about why he was unable to reach a decision in the case. He testified the parties hated each other, they told numerous lies about each other, and it was hard to tell which party was telling the truth. Judge Hagar testified he simply missed issuing an order on the ex parte motion in the Ballou case, he "didn't get to it" and he did not have an excuse. He testified that he "missed [the case] somehow" and he did not remember it until the presiding judge gave him the letter about the demand for a change of judge.

[¶ 12] Judge Hagar testified he developed a plan for docket currency after he was censured, which may have included a role for staff to assist him, but he has not used staff to assist him and he has tried to do his best to keep up with the caseloads since his suspension. The presiding judge testified he received complaints about the delayed decisions in a couple of the cases from attorneys involved in the cases, and he was also made aware of delays in other

cases by courthouse staff. Judge Hagar testified he never followed up with the presiding judge after he received letters about the timeliness of certain cases and he never responded to the letters or talked to the presiding judge about the cases.

[¶ 13] Judge Hagar admits he exceeded docket currency standards but claims the standards are arbitrary and his increased workload should be considered. Exceeding docket currency standards alone generally is not sufficient to constitute a violation of the rules resulting in discipline; rather, the facts and circumstances of each case must be considered. We recognize the North Central Judicial District has a shortage of judicial officers and delays may occur, but a judge must reach a decision on the issues in the case once the parties have presented their positions and the judge has all of the information. Judge Hagar failed to make a decision in the Aberle case for more than one year after the trial was completed, and he failed to reach a decision on the ex parte motion in the Ballou case. Judge Hagar did not explain why he was unable to decide these cases in a timely manner. Judge Hagar developed a plan to keep his docket current after he was censured, but he has failed to implement and follow that plan even after he was previously suspended for failing to timely issue decisions. Judge Hagar had control over these cases and he could have requested help from court staff to assist him in timely deciding cases. Judge Hagar also failed to respond to letters he received from the presiding judge expressing concern about the timeliness of certain decisions.

[¶ 14] There is clear and convincing evidence Judge Hagar violated N.D. Code Jud. Conduct Rules 2.5 and 2.7.

## IV

[¶ 15] Judge Hagar argues the recommended sanction is overly severe and the mitigating factors should be given more weight.

[¶ 16] A number of different sanctions may be imposed for violations of the Code of Judicial Conduct, including removal or suspension. R. Jud. Conduct Comm. 8. The Code of Judicial Conduct indicates numerous factors should be considered in deciding whether discipline should be imposed, stating:

> Whether discipline should be imposed should be determined through a reasonable and reasoned application of the Rules, and should depend upon factors such as the seriousness of the transgression, the facts and circumstances that existed at the time of the transgression, the extent of any pattern of improper activity, whether there have been previous violations, and the effect of the improper activity upon the judicial system or others.

N.D. Code Jud. Conduct, Scope.

[¶ 17] This Court has explained that we consider a list of non-exclusive factors in deciding the appropriate sanction:

> (a) [W]hether the misconduct is an isolated instance or evidenced a pattern of conduct; (b) the nature, extent and frequency of occurrence of the acts of misconduct; (c) whether the misconduct occurred in or out of the courtroom; (d) whether the misconduct occurred in the judge's official capacity or in his private life; (e) whether the judge has acknowledged or recognized that the acts occurred; (f) whether the judge has evidenced an effort to change or modify his conduct; (g) the length of service on the bench; (h) whether there have been prior complaints about this judge; (i) the effect the misconduct has upon the integrity of and respect for the judiciary; and (j) the extent to which the judge

exploited his position to satisfy his personal desires.

McGuire, 2004 ND 171, ¶ 33, 685 N.W.2d 748 (quoting In re Deming, 108 Wash.2d 82, 736 P.2d 639, 659 (1987)). We have also addressed mitigating factors that may be considered, stating:

> With respect to mitigating factors, we generally are mindful that a matter represents the first complaint against a judge, of the length and good quality of the judge's tenure in office, of exemplary personal and professional reputation, of sincere commitment to overcoming the fault, of remorse and attempts at apology or reparations to the victim. We have also found relevant consideration of whether a judge found guilty of misconduct will engage in similar misconduct in the future, or whether the inappropriate behavior is susceptible to modification.

McGuire, at ¶ 33 (quoting In re Seaman, 133 N.J. 67, 627 A.2d 106, 123 (1993)).

[¶ 18] This is the third time Judge Hagar has been before this Court for similar allegations of failing to issue decisions in a timely manner. He was previously censured and later suspended for one month for violating the same or similar rules. The prior suspension began on April 1, 2014, and the misconduct at issue in this case occurred throughout 2014 after his suspension ended. The misconduct resulting in his prior suspension occurred in close proximity to his censure, and the misconduct in this case occurred in close proximity to his prior suspension. Judge Hagar's misconduct has occurred frequently and on a consistent basis, and it evidences a pattern of conduct. Judge Hagar stated he developed a plan to keep his docket current, but he admitted he failed to implement that plan. He has not shown an attempt to change or modify his conduct. Judge Hagar admitted he violated the rules but he did not provide any explanation for his failure to diligently act in these cases. In Ballou, Judge Hagar failed to decide an ex parte motion and the moving party had to request a change of judge. In Aberle, the parties eventually settled after completing the trial and an evidentiary hearing when Judge Hagar did not issue a decision for more than thirteen months after the trial and more than 90 days after the evidentiary hearing. Judge Hagar's conduct has caused the parties unnecessary costs and delays and damaged the integrity of and respect for the judiciary.

[¶ 19] Judge Hagar presented information about the heavy workload of the district court judges within the judicial district, his involvement in drug court, and his clearance rate. The heavy caseload is a mitigating factor that favors Judge Hagar. However, these mitigating factors do not outweigh the aggravating factors under the circumstances of this case.

[¶ 20] This Court's disciplinary orders are not intended to be "empty noise." Hagar II, 2014 ND 33, ¶ 11, 842 N.W.2d 873. The prior censure and one month suspension did not deter Judge Hagar from repeating the same misconduct. We adopt the Commission's recommendation that Judge Hagar be suspended for three months without pay and that a temporary judge be permitted to be appointed in accordance with N.D.C.C. ch. 27–24. We order Judge Hagar to pay the costs and expenses of the disciplinary proceedings. We adopt the Commission's recommendations, except the recommendation that Judge Hagar be required to attend the course on "Decision Making" offered by the National Judicial College.

V

[¶ 21] We conclude there is clear and convincing evidence Judge Hagar violated

N.D. Code Jud. Conduct Rules 2.5 and 2.7. We order that Judge Hagar be suspended from his position as district judge for three months without pay commencing May 1, 2017, and that he be assessed $10,118.67 for the costs and expenses of the disciplinary proceedings.

[¶ 22] Gerald W. VandeWalle, C.J.

Lisa Fair McEvers

Carol Ronning Kapsner

Jerod E. Tufte

Daniel J. Crothers