685 N.W.2d 748 (2004)
2004 ND 171
In the Matter of the Application for DISCIPLINARY ACTION AGAINST Michael O. McGUIRE, Judge of the District Court.
Judicial Conduct Commission, Petitioner
v.
Michael O. McGuire, Respondent.
No. 20040073.
Supreme Court of North Dakota.
August 31, 2004.
*751 Paul W. Jacobson (argued), Disciplinary Staff, Bismarck, N.D., for petitioner.
Mark J. Condon (on brief), Johnson & Condon, P.A., Minneapolis, MN, for respondent.
Michael O. McGuire (on brief), pro se, Fargo, ND, for respondent.

SUSPENSION ORDERED.
PER CURIAM.
[¶ 1] This is a disciplinary proceeding against Michael O. McGuire, Judge of the District Court for the East Central Judicial District. We conclude there is clear and convincing evidence that Judge McGuire violated N.D.Code Jud. Conduct Canons 1A, 2, and 3B(4). We suspend Judge McGuire from his position as a district judge, without net pay from November 1, 2004, through the end of his term of office on December 31, 2004, and assess *752 against him the costs and attorney fees necessary for the prosecution of these proceedings.

I
[¶ 2] Judge McGuire graduated from the University of North Dakota School of Law in 1970 and was first elected Cass County Judge with Increased Jurisdiction in 1978. He was appointed district judge in 1979 and was elected district judge in 1980, 1986, 1992 and 1998. He currently serves in Judgeship Number 4 of the East Central Judicial District in Fargo and was Presiding Judge of the District from February 2001 until May 23, 2003. He is not seeking re-election and will end his term of office on December 31, 2004.
[¶ 3] In November 2003, the Judicial Conduct Commission initiated formal proceedings against Judge McGuire concerning allegations of inappropriate behavior directed at seven female employees in the Cass County Courthouse. In a 14-count complaint, Judge McGuire was charged with violating N.D.Code Jud. Conduct Canons 1A, 2, 3B(4), and 4A(2). A hearing was held before a four-person hearing panel on March 2, 2004. The panel found the following facts:

4.
Count I. It was alleged that on or about January 24, 2002, there was a meeting in [employee's] office regarding DNA testing. After the meeting, Judge McGuire returned to [employee's] office with a new computer mouse. He is alleged to have said, "I thought you might like this model. It's gray with a red ball." He is then alleged to have gotten under the desk to attach the mouse to [employee's] computer. At that point he was to have turned to [employee] and said, "Kind of reminds you of a testicle, doesn't it?" Judge McGuire denies that the statement was made. [Employee] further testified that she reported this incident to [other employees] and Judge Georgia Dawson within several weeks of it happening.
Weighing the credibility of the witnesses with respect to this incident the Hearing Panel finds the testimony of [employee] to be the more credible version of the actual facts surrounding this incident. The Hearing Panel further finds that the evidence does establish by clear and convincing evidence that Judge McGuire did make the statement as related by [employee] in the context she has related in her testimony.
5.
Count II. It was alleged that on March 11, 2002, while in [employee's] office at the Cass County Courthouse, Judge McGuire engaged [employee] in a discussion about how the word clitoris was to be pronounced. [Employee] testified that the conversation was not a subject of a court proceeding but rather an informal conversation initiated by Judge McGuire without invitation of [employee]. Judge McGuire gave testimony attempting to explain the context of the discussion, suggesting that the conversation had to do with his criminal court caseload. [Employee] testified that she reported this incident to Dorothy Howard, Clerk of the District Court and Judge Georgia Dawson within days of the incident.
Weighing the credibility of the witnesses with respect to this incident the Hearing Panel finds the testimony of [employee] to be the more credible version of the actual facts surrounding this incident. The Hearing Panel further finds that the evidence does establish by clear and convincing evidence that Judge McGuire made the statement as related by [employee] in her testimony.

*753 6.
Count III. It was alleged that on February 4, 2003, Judge McGuire upon observing a letter wherein [employee] was specifically referred to in the body of the letter as "Madam", stated to [employee] that such reference would put her in the same category as "Heidi Fleiss." ... The Hearing Panel takes notice of the reality that Heidi Fleiss refers to the notorious "Hollywood Madam" who was convicted of running a high-priced prostitution ring in Hollywood, CA. Judge McGuire gave testimony attempting to explain the context of the statement, suggesting that he was merely making comment that the term was an old fashioned method of referring to women and that his comment was innocent of interpretation.
Weighing the credibility of the witnesses with respect to this incident the Hearing Panel finds the testimony of [employee] to be the more credible version of the actual facts surrounding this incident. The Hearing Panel further finds that the evidence does establish by clear and convincing evidence that Judge McGuire made the statement as related by [employee] in her testimony.
7.
Count IV. It was alleged that on February 24, 2003, Judge McGuire came into [employee's] office, closed the door and apologized for his behavior regarding the clerk's office reorganization. Judge McGuire was to have said that he had handled the reorganization poorly and [employee] responded saying she accepted the apology. At that point, Judge McGuire by testimony of [employee] put his left elbow on the desk and leaned over and stated to [employee], "Now can I sleep with you?" Judge McGuire categorically denies that any statement of that nature was made by him, although he admits that he did speak with [employee] about the issue of the reorganization of the clerk's office. [Employee] reported the incident within days to Dorothy Howard, Clerk of the District Court and Judge Norman Backes.
Weighing the credibility of the witnesses with respect to this incident the Hearing Panel finds the testimony of [employee] to be the more credible version of the actual facts surrounding this incident. The Hearing Panel further finds that the evidence does establish by clear and convincing evidence that Judge McGuire made the statement as related by [employee] in her testimony.
8.
Count V. On November 19, 2000, there appeared in the Fargo Forum a wedding announcement concerning Judge McGuire's daughter.... At a date following publication, [employee] commented to Judge McGuire that she had seen the announcement and told the judge that it was a nice photograph of the couple. Judge McGuire by the testimony of [employee] was to have responded, "Don't you think her breasts are too large? She is on birth control and it makes her breasts large." As he made the statement, [employee] testified that Judge McGuire cupped his hands at the breast level of his chest. She also testified that the announcement was not in her hands at the time the statement was made to her by Judge McGuire. In contrast, Judge McGuire testified that absolutely no statement regarding his daughter's anatomy was made by him during this contact. [Employee] related the incident to Dorothy Howard, Clerk of the District Court following the incident.

*754 Weighing the credibility of the witnesses with respect to this incident the Hearing Panel finds the testimony of [employee] to be the more credible version of the actual facts surrounding this incident. The Hearing Panel further finds that the evidence does establish by clear and convincing evidence that Judge McGuire made the statement as related by [employee] in her testimony.
9.
Count VI. At a time described to have taken place in the last six years, Judge McGuire is alleged to have approached [employee], while she was in the coffee room at the district court and twirled her hair. On another occasion thereafter Judge McGuire came into the same coffee room and declared, "Let's talk about how satisfying our sex lives are and, [employee], let's start with you." Other district court personnel were present when this conduct occurred. [Employee] while testifying about the actual words and conduct and while stating that she believed it occurred within the last six years could not be definitive. Judge McGuire in his response to the complaint does not recall the twirling of hair incident and while admitting that he did make the comment concerning a discussion of "sex lives" was only making a demonstrative statement to the collective group in the coffee room to discourage them from gossiping about other employees.
Weighing the credibility of the witnesses with respect to this incident the Hearing Panel finds the testimony of [employee] to be the more credible version of the actual facts surrounding these incidents. The Hearing Panel further finds that the evidence does establish by clear and convincing evidence that Judge McGuire made the statement as related by [employee] in her testimony. The Hearing Panel nonetheless also finds that the evidence does not establish that these events occurred within six years before the receiving of the complaint. N.D.C.C. § 27-23-03(3).
10.
Count VII. At a Secretaries Day Luncheon at the Fargo Country Club during the first week of May, 2003, Judge McGuire was alleged to have said to [employee], "What are you going to have, my little teacup?" The statement was made in the presence of Judge Frank Racek, Judge John Irby, and Judge Lawrence LeClerc, all of whom gave testimony of their recollection of the comment. Judge McGuire testified that the comment was more accurately "How's your ice tea, teacup?" rather than "my little teacup."
Weighing the credibility of the witnesses with respect to this incident the Hearing Panel finds the testimony of [employee] to be the more credible version of the actual facts surrounding this incident. The Hearing Panel further finds that the evidence does establish by clear and convincing evidence that Judge McGuire made the statement as related by [employee] in her testimony.
11.
Count VIII. It was alleged that at a time within the last six years from the date of receiving the complaint, [employee], came into a law clerk's office to deliver a message to Judge McGuire. At that point Judge McGuire placed one hand on top of the head of [employee] and the other under her chin. The conduct was uninvited by [employee]. She testified that she felt intimidated by the conduct. While admitting that he "framed her face" Judge McGuire testified *755 that he was simply framing her face much like a director does in setting up a scene. He was trying to demonstrate that her face would fit in some picture frame. At another time [employee] recalls Judge McGuire touching her cheek which Judge McGuire recalled as well. The date could not, however, be established. A third incident occurred in April 2003 at a going away coffee party for Judge Ralph Erickson held in the library of the courthouse. [Employee] testified that she stepped into the room to deliver a message to Judge McGuire who placed his arm and hand on the midpart of her back. She was uncomfortable with the conduct which she did not interpret as a social gesture. Judge McGuire testified that he recalls the incident; however, he saw it as simply a social gesture ushering [employee] to go before him in the reception line.
Weighing the credibility of the witnesses with respect to these three incidents the Hearing Panel finds the testimony of [employee] to be the more credible version of the actual facts surrounding each of these incidents. The Hearing Panel further finds that the evidence does establish by clear and convincing evidence that Judge McGuire made the contact as related by [employee] in her testimony. The Hearing Panel nonetheless also finds that with respect to the incident involving the touching on [employee's] cheek that the evidence does not establish this event occurred within six years before the receiving of the complaint. N.D.C.C. § 27-23-03(3). The other two events described met the applicable statutory timeframe.
12.
Count IX. It was alleged that at a time within six years from the reporting of the incident that Judge McGuire in the context of a court proceeding involving a "no contact" order stated to the man who was the subject of the order, "I don't care if she asks you to cook dinner, to pick you up, to give you a blow job, don't have any contact with her." The comment was made when [employee] ... was present in the courtroom. Judge McGuire admits that such a statement was likely said by him but that the language was necessary given the behavior of the individual against whom the order was directed.
Weighing the credibility of the witnesses with respect to this incident the Hearing Panel finds the testimony of [employee] and Judge McGuire to be generally consistent with each other. The Hearing Panel further finds that the evidence does establish by clear and convincing evidence that Judge McGuire made the statement as related by [employee] in her testimony. The context of the statement, however, is unclear and therefore the comment is considered by the Hearing Panel as a part of the totality of circumstances involving this judge and these women. The Hearing Panel acknowledges the practical reality that district judges deal with vulgar subjects throughout civil and criminal proceedings. Even with that reality this event is distinguishable.
13.
Count X. At a time well within six years of the reporting of this event it is alleged that Judge McGuire made inquiry of [employee], about whether another woman employee at the courthouse was having a relationship with another judicial system employee who was that person's superior and then commented to [employee], "Well, there can't be anything sexual because she doesn't have any breasts." [Employee] then testified that Judge McGuire commented to the *756 effect, "I wonder if he knows she had a double mastectomy; well, of course, he does." [Employee] expressed shock at these comments and found them insensitive. Judge McGuire admits to the statements but describes them as evolving out of frustration stemming from the relationship between the two judicial employees. He concedes they were inappropriate, ill-advised, and insensitive remarks. Upon the filing of these formal charges, Judge McGuire testified that he apologized to the unnamed woman employee, a fact the Hearing Panel accepts.
Weighing the credibility of the witnesses with respect to this incident the Hearing Panel finds the testimony of [employee] to be the more credible version of the actual facts surrounding this incident. The Hearing Panel further finds that the evidence does establish by clear and convincing evidence that Judge McGuire made the statement as related by [employee] in her testimony.
14.
Count XI. At a time well within six years from the date it was reported Judge McGuire approached [employee] ... and "flipped her hair." The conduct was uninvited and unwanted by [employee]. This event happened in the coffee room in the presence of other employees. Judge McGuire admitted in testimony that he "gave her hair a playful tug" and when she told him "do not do that" he apologized and left the room. [Employee] testified that this conduct on Judge McGuire's part was "not unusual" but that on this date and at that time "I had had it with that type of behavior." She did not recall an apology.
Weighing the credibility of the witnesses with respect to this incident the Hearing Panel finds the testimony of [employee] and Judge McGuire to be generally consistent with each other. The Hearing Panel further finds that the evidence does establish by clear and convincing evidence that Judge McGuire did commit the unwanted touching as related by [employee] in her testimony. The Hearing Panel also finds by clear and convincing evidence as testified to by [employee] on rebuttal that she was personally aware there had been one other instance of unwanted touching of a woman court employee by Judge McGuire.
15.
Count XII. On an occasion established in the record as occurring within the last year Judge McGuire was alleged to have come to the office of [employee] and was asked if she wanted to file a sexual harassment claim against Judge Lawrence LeClerc whom he believed had slapped her on the backside with a file folder. [Employee] explained in her testimony that she told Judge McGuire that regardless of what he had heard the event did not happen and in any event she saw no basis to file any harassment claim. Judge McGuire returned a second time to her office and again asked if she wanted to initiate a claim of harassment against Judge LeClerc. She reiterated that the event did not happen and again told him there was nothing for her to report and that she had no complaint against Judge LeClerc. At that point, Judge McGuire asked [employee], "Does that mean if you work for me next month I can get away with that (slapping you on the backside)?" Judge McGuire admits to the statement but describes it as "figurative communication" which was "not to be taken in the literal sense." [Employee] testified that she was rendered speechless by the *757 statement and was deeply offended by the comment.
Weighing the credibility of the witnesses with respect to this incident the Hearing Panel finds the testimony of [employee] to be the more credible version of the actual facts surrounding this incident. The Hearing Panel further finds that the evidence does establish by clear and convincing evidence that Judge McGuire made the statement as related by [employee] in her testimony.
16.
Count XIII. It is alleged that in September of 2002 Judge McGuire spoke with [employee] while she was working on a file in the courthouse library. At the time [employee] testified that while she had graduated from law school she was not yet sworn into the bar in North Dakota. She had been on the job for about a month and [a] half. Judge McGuire "out of the blue" told her about a Moorhead attorney who had gotten into trouble in the Twin Cities because he had solicited oral sex with a prostitute who turned out to be an undercover police woman. [Employee] recited the name of the file she was working on and testified that the attorney referenced by Judge McGuire had nothing to do with the case she was working on. Judge McGuire testified that he did make reference to an attorney who had committed the conduct but did so only after [employee] had referenced that same attorney as the one who was involved as a counsel in the case she was working on at the time. [Employee] testified the comments were not solicited by her and that she was dumbfounded and offended by the remarks....
Weighing the credibility of the witnesses with respect to this incident the Hearing Panel finds the testimony of [employee] to be the more credible version of the actual facts surrounding this incident. The Hearing Panel further finds that the evidence does establish by clear and convincing evidence that Judge McGuire made the statement as related by [employee] in her testimony.
17.
Count XIV. Within the year 2002, [employee] testified that as she passed Judge McGuire in [the] hall of the courthouse, he said to her, "You look really good in that outfit" and made a facial gesture which made her feel extremely uncomfortable. Upon examination she described the infliction of tone of the comment to be heavily on the word "good" and in response to questions of counsel agreed that the uncomfortable glance she was attempting to describe was "elevator eyes" going from her feet to her head. She recalled another occasion within the same timeframe where Judge McGuire began a sexual conversation with her by referring to a man at a local fair having sex with a pig. Judge McGuire recalls commenting on [employee's] outfit but describes it as nothing more than [a] compliment. With respect to the farm animal incident Judge McGuire testified that [employee's] husband ... undoubtedly related the story and that he was just attempting to correct some inaccuracies in the story, essentially that the animal was a pig and not a sheep and that the man was not accused of having sex with the pig but rather of sexually manipulating a prize pig at the fairgrounds causing it to become so agitated as to be in danger of physical suffering and injury. [Employee's husband] also testified and stated that it was not he who had related the story to his wife but rather Judge McGuire.

*758 Weighing the credibility of the witnesses with respect to this incident the Hearing Panel finds the testimony of [employee] to be the more credible version of the actual facts surrounding this incident. The Hearing Panel further finds that the evidence does establish by clear and convincing evidence that Judge McGuire made the statements and gestures as related by [employee] in her testimony.
The hearing panel also found that "none of the seven women who presented testimony had a social relationship with Judge McGuire."
[¶ 4] The hearing panel concluded Judge McGuire violated N.D.Code Jud. Conduct Canons 1A, 2, 3B(4) and 4A(2), which require that a judge maintain high standards of conduct; avoid the appearance of impropriety; be patient, dignified and courteous to persons the judge deals with in an official capacity; and conduct all extrajudicial activities so they do not demean the judicial office. The panel recommended that Judge McGuire be suspended from his position as district judge for a period of 60 days, resulting in a monetary penalty of approximately $17,000 in lost wages and benefits; that he be assigned during his remaining term within the East Central Judicial District by its Presiding Judge so those witnesses who remain employees do not face retaliation for their testimony; and that he bear the costs and attorney fees which were reasonably necessary for the prosecution of these proceedings.

II
[¶ 5] Judge McGuire raised 60 exceptions to the hearing panel's findings, conclusions and recommendations. Most of the exceptions challenge the panel's factual findings. Judge McGuire essentially argues the panel's findings of fact are not supported by the evidence, he was improperly denied discovery, he was improperly denied the right to present certain evidence in his defense, the North Dakota Code of Judicial Conduct is unconstitutionally vague, the panel's conclusions of law are not supported by the findings, and the panel's recommended sanction is not appropriate.

A
[¶ 6] On the recommendation of the Commission or its hearing panel, this Court may censure or remove a judge from office for a willful violation of the Code of Judicial Conduct. See N.D.C.C. § 27-23-03(3); Judicial Conduct Comm'n v. Hoffman, 1999 ND 122, ¶ 5, 595 N.W.2d 592; Judicial Conduct Comm'n v. Grenz, 534 N.W.2d 816, 817 (N.D.1995); Judicial Qualifications Comm'n v. Schirado, 364 N.W.2d 50, 52 (N.D.1985). The term "willfully," when used in disciplinary proceedings against a judge, means acts that "were the performer's free will and were not done under coercion." Judicial Qualifications Comm'n v. Cieminski, 270 N.W.2d 321, 327 (N.D.1978); see also Judicial Qualifications Comm'n v. Cieminski, 326 N.W.2d 883, 886 n. 8 (N.D.1982). Before we may censure or remove a judge in a disciplinary proceeding, the charges must be established by clear and convincing evidence. Schirado, 364 N.W.2d at 52; Cieminski, 270 N.W.2d at 326. We review the Commission's findings and recommendations de novo on the record. Hoffman, 1999 ND 122, ¶ 5, 595 N.W.2d 592; Grenz, 534 N.W.2d at 817-18. Although our review is de novo, we accord due weight to the hearing body's findings because the hearing body had the opportunity to observe the demeanor of the witnesses. Grenz, 534 N.W.2d at 818; Schirado, 364 N.W.2d at 52.
[¶ 7] Judge McGuire argues the hearing panel's findings of fact are incorrect *759 because the panel misapplied the clear and convincing evidence standard. He relies on Bodding v. Herman, 76 N.D. 324, 329, 35 N.W.2d 561, 563 (1948), where this Court, in describing the "clear and convincing" evidence required to establish an implied trust, stated the "evidence must be strong enough to lead to but one conclusion," and "[i]f the evidence is doubtful or capable of reasonable explanation upon theories other than the existence of a trust it is not sufficient to establish a trust." Judge McGuire's primary defense during the hearing was that the employees were angry over his restructuring efforts in the office while he served as Presiding Judge and their allegations were simply attempts to retaliate against him. Judge McGuire argues that the only evidence provided during the hearing, other than the testimony of the witnesses of the incidents, was corroborative evidence supporting his position. He therefore contends, following Bodding, there is not clear and convincing evidence to support the factual findings.
[¶ 8] We conclude there is clear and convincing evidence that supports the hearing panel's quoted findings of fact. The "Bodding doctrine," relied upon by Judge McGuire, was specifically rejected by this Court in Zundel v. Zundel, 278 N.W.2d 123, 129 (N.D.1979), because it "would create a burden of proof upon a claimant equivalent to or greater than the `beyond a reasonable doubt' standard required in criminal cases." Instead, this Court said, "under the clear and convincing standard, the evidence must be such that the trier of fact is reasonably satisfied with the facts the evidence tends to prove as to be led to a firm belief or conviction." Id. at 130. In Zander v. Workforce Safety and Ins., 2003 ND 194, ¶ 11, 672 N.W.2d 668, we said:
"Clear and convincing evidence" does not require a showing by "100 per cent certainty" or "absolute certainty." This Court, in a long line of cases, has repeatedly held that clear and convincing evidence means evidence which leads to a firm belief or conviction that the allegations are true. See, e.g., In re Adoption of J.M.H., 1997 ND 99, ¶ 7, 564 N.W.2d 623; State v. Schneider, 550 N.W.2d 405, 410 (N.D.1996); In re Adoption of J.W.M., 532 N.W.2d 372, 378 (N.D.1995); In re Estate of Stanton, 472 N.W.2d 741, 744 (N.D.1991); Black v. Peterson, 442 N.W.2d 426, 429 (N.D.1989); McCarney v. Knudsen, 342 N.W.2d 380, 385 (N.D.1983); Pritchett v. Executive Dir. of the Soc. Serv. Bd., 325 N.W.2d 217, 220 (N.D.1982); Zundel v. Zundel, 278 N.W.2d 123, 130 (N.D.1979).
Although it is a higher standard of proof than proof by the greater weight of the evidence, the evidence presented need not be undisputed to be clear and convincing. Zander, at ¶ 11 (quoting N.D.J.I. C-1.41). A factfinder need not believe the greater number of witnesses. Hill v. Weber, 1999 ND 74, ¶ 12, 592 N.W.2d 585.
[¶ 9] We conclude the quoted findings of fact, with one exception, are supported by clear and convincing evidence, and we adopt them. Disciplinary counsel concedes the discussion about the "farm animal incident" in finding 17 occurred more than six years before receipt of the complaint and, therefore, cannot serve as the basis for discipline under N.D.C.C. § 27-23-03(3). Disciplinary counsel argues the discussion about the "farm animal incident" is nevertheless relevant in explaining why the employee felt "extremely uncomfortable" when Judge McGuire complimented her attire in the hall of the courthouse. We review the allegations of judicial misconduct by Judge McGuire with this clarification in mind.

*760 B
[¶ 10] Judge McGuire argues the hearing panel improperly denied his request for discovery of materials relating to an investigative report which was completed before formal charges were brought against him. He relies on Lashkowitz v. Disciplinary Bd., 410 N.W.2d 502, 506 (N.D.1987), in which this Court held the civil discovery rules apply to lawyer disciplinary cases.
[¶ 11] Unlike the lawyer disciplinary rules, R. Jud. Conduct Comm. 15(H) provides that "[p]roceedings under these Rules are not subject to the Rules of Civil Procedure regarding discovery except those rules relating to depositions and subpoenas." Generally, in judicial disciplinary proceedings "the party seeking discovery ... has to show a need for the information beyond mere relevance." J. Shaman, S. Lubet & J. Alfini, Judicial Conduct and Ethics § 13.05, at pp. 443-44 (3d ed. 2000) ("Judicial Conduct and Ethics"). Under R. Jud. Conduct Comm. 15(A), disciplinary counsel and respondent are required to "exchange the names and addresses of all persons known to have knowledge of the relevant facts" within 20 days of the filing of an answer. Disciplinary counsel is required to provide respondent with "exculpatory evidence relevant to the formal charges" under R. Jud. Conduct Comm. 15(C), but disciplinary counsel claimed he was unaware of any information that would exculpate Judge McGuire. Disciplinary counsel did not introduce the investigative report and provided Judge McGuire with summaries of interviews with witnesses who would be called at the hearing.
[¶ 12] Rule 15(B), R. Jud. Conduct Comm., provides:
B. Other evidence. Disciplinary counsel and respondent shall exchange:
(1) non-privileged evidence relevant to the formal charges, documents to be presented at the hearing, witness statements, and summaries of interviews with witnesses who will be called at the hearing; and
(2) other material only upon good cause shown to the chair of the hearing panel.
In response to Judge McGuire's motion to compel discovery of the investigative report, disciplinary counsel argued that the report was subject to the lawyer-client privilege because it contained the mental impressions and theories of the attorney employed to conduct the investigation. The hearing panel noted that the allegations in the complaint were sufficiently precise to afford Judge McGuire notice of the allegations. Judge McGuire did not claim he was unfairly surprised by the witnesses' testimony. We conclude the hearing panel did not abuse its discretion in refusing to grant Judge McGuire's motion to compel discovery of the investigative report.

C
[¶ 13] Judge McGuire argues the hearing panel erred in precluding him from introducing relevant evidence during the hearing. He contends he should have been allowed to introduce evidence of a witness'"three year history of lying on a regular basis" and evidence regarding the workplace environment.
[¶ 14] During the hearing, the panel sustained an objection to the question by Judge McGuire's attorney whether a witness had "lied to deceive other people for approximately a three-year period of time?" The attorney made an offer of proof "that for a period of 1993 to 1996 she would have answered that question in the affirmative." Under N.D.R.Ev. 608(b), "[s]pecific instances of *761 the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in N.D.R.Ev. 609, may not be proved by extrinsic evidence. However, in the discretion of the court, if probative of truthfulness or untruthfulness, they may be inquired into on cross-examination of the witness (i) concerning the witness' character for truthfulness or untruthfulness." A court has wide discretion under this rule, and the court must also determine whether other considerations outweigh the probative value of that evidence under N.D.R.Ev. 403. See State v. Moran, 474 N.W.2d 77, 78 (N.D.1991). Moreover, "the Rules of Evidence in a proceeding before the Commission need not be applied strictly or technically." Cieminski, 270 N.W.2d at 326-27. Considering the vague substance of the excluded evidence, we conclude the hearing panel did not abuse its discretion in sustaining the objection.
[¶ 15] Judge McGuire complains about the panel's refusal to allow him to introduce evidence about the workplace environment. He argues he should have been allowed to cross-examine the witnesses about their "lack of sensitivity to the types of issues and claims being made against" him. He also argues he should have been allowed to introduce several risque birthday gifts he received from some of the witnesses and pictures from the birthday party. According to Judge McGuire, the panel's refusal to admit this evidence prevented him "from properly building a record that accurately reflects the witnesses' ongoing behaviors and attitudes for many years in the Cass County Courthouse."
[¶ 16] The only issues before the hearing panel were whether Judge McGuire violated the provisions of the Code of Judicial Conduct charged in the complaint. Whether Judge McGuire's conduct constituted sexual harassment as defined under state or federal law was not an issue in these proceedings. See Hoffman, 1999 ND 122, ¶ 9, 595 N.W.2d 592 (holding whether judge's conduct was criminal harassment or stalking was of "no moment" because the "relevant question" was whether the judge violated Code of Judicial Conduct). While the excluded evidence may have been relevant in a claim of hostile work environment sexual harassment, see, e.g., Duncan v. General Motors Corp., 300 F.3d 928, 933 (8th Cir.2002), we conclude it was not relevant here and was properly excluded by the panel. See also N.D.Code Jud. Conduct Canon 3B(4) (providing a judge shall require dignified conduct of "staff, court officials and others subject to the judge's direction and control").
[¶ 17] We have reviewed Judge McGuire's additional evidentiary challenges, and conclude the panel did not abuse its discretion in its rulings.

D
[¶ 18] Judge McGuire argues the Code of Judicial Conduct is void for vagueness, because its standards do not provide a judge with sufficient notice that he or she may be engaging in prohibited conduct.
[¶ 19] The void-for-vagueness doctrine applies to civil rules and statutes as well as criminal statutes. See Stoner v. Nash Finch, Inc., 446 N.W.2d 747, 755 (N.D.1989); In Interest of E.B., 287 N.W.2d 462, 463 (N.D.1980). The due process clauses of the federal and state constitutions are not violated under the void-for-vagueness doctrine if the challenged language, when measured by common understanding and practice, gives adequate warning of the conduct proscribed and marks boundaries sufficiently distinct for fair administration of the law. Western Gas Res., Inc. v. Heitkamp, 489 N.W.2d *762 869, 873 (N.D.1992); Stoner, 446 N.W.2d at 755. In determining whether a statute or rule gives adequate warning of proscribed conduct, we view it from the standpoint of the reasonable person who might be subject to its terms. State v. Tranby, 437 N.W.2d 817, 821 (N.D.1989). A statute or rule is not unconstitutionally vague merely because it does not specifically designate the various different means by which it is violated. Stoner, 446 N.W.2d at 755.
[¶ 20] Judge McGuire has cited no authority holding rules of judicial conduct similar to the North Dakota Code of Judicial Conduct are unconstitutionally vague, and we have found none. Rather, courts in other jurisdictions appear to have routinely rejected vagueness challenges to codes of judicial conduct. In In re Barr, 13 S.W.3d 525, 565 (Tex.Rev.Trib.1998) (Opinion on Rehearing), the court observed:
Arguments in other jurisdictions that constitutional and statutory provisions for the discipline of judges were vague or overbroad have been consistently rejected on the ground that the Code of Judicial Conduct furnished sufficient specification of the judicial conduct which warrants disciplinary action. ... Statutes and constitutional provisions which define in similarly broad terms the grounds for removal of judges from office have been upheld in In re Lowery, 999 S.W.2d 639 (Tex.Rev.Trib.1998, pet.denied); Napolitano v. Ward, 317 F.Supp. 79 (N.D.Ill.1970) ("for cause"); Keiser v. Bell, 332 F.Supp. 608 (E.D.Pa.1971); Halleck v. Berliner, 427 F.Supp. 1225 (D.D.C.1977); In re Nowell, 293 N.C. 235, 237 S.E.2d 246 (1977); Nicholson v. Judicial Retirement and Removal Comm., 562 S.W.2d 306 (Ky.1978); and In re Gillard, 271 N.W.2d 785 (Minn.1978).
In light of these decisions, we find no merit in Respondent's contention that the standards he was found to have violated are unconstitutionally vague. While the Canons challenged in this matter may proscribe some speech and conduct which, for other persons in other circumstances, could not be constitutionally proscribed, Respondent's contention that they are unconstitutionally overbroad must be and is rejected. It is well established that judges, in company with other public servants, must suffer from time to time such limits on these rights as are appropriate to the exercise in given situations of their official duties or functions. In re Lowery, 999 S.W.2d 639 (Tex.Rev.Trib.1998, pet.denied). The limitations imposed by the rules are made necessary by the very nature of the task which a judge seeks to perform.
[¶ 21] We agree with this reasoning and conclude that the challenged provisions of the Code of Judicial Conduct are not unconstitutionally vague.

E
[¶ 22] Judge McGuire argues the evidence does not support the hearing panel's conclusion that he violated the North Dakota Code of Judicial Conduct.
[¶ 23] Canon 1A of the Code of Judicial Conduct declares in part that a "judge shall uphold the integrity and independence of the judiciary[,] ... should participate in establishing, maintaining and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved." Canon 2 of the Code of Judicial Conduct similarly provides that a "judge shall avoid impropriety and the appearance of impropriety in all of the judge's activities." The Commentary to Canon 2A explains:

*763 Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety. A judge must expect to be the subject of constant public scrutiny. A judge must therefore accept restrictions on the judge's conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly.
The prohibition against behaving with impropriety or the appearance of impropriety applies to both the professional and personal conduct of a judge.... The test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired.
See also Graves v. State Bd. of Law Exam'rs, 2004 ND 64, ¶ 12, 677 N.W.2d 215.
[¶ 24] Canon 3B(4) of the Code of Judicial Conduct provides that a "judge shall perform the duties of judicial office impartially and diligently [,] ... shall be patient, dignified and courteous to litigants, jurors, witnesses, lawyers and others with whom the judge deals in an official capacity, and shall require similar conduct of lawyers, and of staff, court officials and others subject to the judge's direction and control."
[¶ 25] At best, Judge McGuire's conduct in this case can be described as puerile or boorish. While not every incident of this type of behavior may be a ground for judicial discipline, see In re Voorhees, 739 S.W.2d 178, 187-88 (Mo.1987), the record establishes a lengthy pattern of Judge McGuire making inappropriate comments to and inappropriate physical contacts with female employees. Other courts have ruled that conduct of this nature warrants judicial discipline. See Judicial Conduct and Ethics §§ 3.04, 3.06, 3.09, 10.29, and cases collected therein. We are satisfied that there is clear and convincing evidence Judge McGuire violated N.D.Code Jud. Conduct Canons 1A, 2 and 3B(4).
[¶ 26] The hearing panel also concluded Judge McGuire violated N.D.Code Jud. Conduct Canon 4A(2), which provides that a "judge shall so conduct the judge's extra-judicial activities as to minimize the risk of conflict with judicial obligations ... [and] shall conduct all of the judge's extra-judicial activities so that they do not ... demean the judicial office." We assume the panel found a violation of the Canon based on the incident at the Secretaries Day Luncheon at the Fargo Country Club.
[¶ 27] Few courts have attempted to delineate the "contrast between judicial and extra-judicial activities." In re A.H. Robins Co., Inc., 602 F.Supp. 243, 246 (D.Kan.1985). Courts have noted, however, that extra-judicial conduct is not simply conduct arising geographically outside of the courtroom, but is conduct which arises from something outside of the events of the courtroom itself. See, e.g., McCann v. Communications Design Corp., 775 F.Supp. 1506, 1527 (D.Conn.1991); Person v. General Motors Corp., 730 F.Supp. 516, 518 (W.D.N.Y.1990). Here, although the luncheon occurred outside of the courthouse, Judge McGuire and other judges from the District were in the process of honoring their employee assistants when the incident occurred. Other than the location, the luncheon was in all practical respects a judicial function involving judges and employees of the court system. We decline to so broadly construe an extra-judicial activity as including a luncheon with judges and support personnel. Because we hold the luncheon was not an extra-judicial activity, and because *764 N.D.Code Jud. Conduct Canon 4A(2) addresses only extra-judicial activities, we conclude there is not clear and convincing evidence that Judge McGuire violated Canon 4A(2).

III
[¶ 28] Judge McGuire raises numerous arguments challenging the hearing panel's proposed sanctions.

A
[¶ 29] Judge McGuire argues the hearing panel acted beyond the scope of its authority by recommending a 60-day suspension without pay, resulting in a monetary penalty of approximately $17,000 in lost wages and benefits. According to Judge McGuire, this sanction violates N.D. Const. art. VI, § 9, which provides in part that the "compensation of district judges shall be fixed by law, but the compensation of any district judge shall not be diminished during his term of office."
[¶ 30] Constitutional provisions must be construed together. Kelsh v. Jaeger, 2002 ND 53, ¶ 19, 641 N.W.2d 100. Under N.D. Const. art. VI, § 12, the "legislative assembly may provide for the retirement, discipline, and removal of judges." The legislature has enacted N.D.C.C. ch. 27-23, which allows this Court to "publicly censure or remove a judge for action that constitutes ... willful violation of the code of judicial conduct," N.D.C.C. § 27-23-03(3), and directs this Court to "make rules implementing this chapter." N.D.C.C. § 27-23-03(5). This Court has adopted R. Jud. Conduct Comm. 8B, which specifically lists "suspension" as a possible sanction.
[¶ 31] Because N.D. Const. art. VI, § 12, allows the legislature to provide for the discipline and "removal" of judges, we refuse to interpret the N.D. Const. art. VI, § 9 prohibition against diminishing a district judge's compensation during his term of office in the manner urged by Judge McGuire. A maxim of jurisprudence provides the "greater contains the less." N.D.C.C. § 31-11-05(27). A suspension, which is a lesser sanction than removal from office, is therefore authorized by the constitution. Compare Wisdom v. North Dakota Real Estate Comm'n, 403 N.W.2d 19, 22 (N.D.1987) (holding the power to suspend includes the power to impose the lesser sanction of reprimand). A suspension with full compensation and benefits is more comparable to a paid vacation than to a sanction for violating the Code of Judicial Conduct. We view a suspension without compensation as a sanction authorized by N.D. Const. art. VI, § 12, and not a diminishment in compensation as contemplated by N.D. Const. art. VI, § 9. See Cieminski, 326 N.W.2d at 889 (suspending judge from office without pay for three months).

B
[¶ 32] Under R. Jud. Conduct Comm. 8, a number of different sanctions may be imposed for violation of the Code of Judicial Conduct:
Sanctions. These sanctions may be imposed upon a respondent who has committed misconduct;
A. removal or retirement by the Supreme Court;
B. suspension by the Supreme Court;
C. imposition by the Supreme Court of limitations on the performance of judicial duties;
D. imposition of lawyer discipline by the Supreme Court;
E. censure by the Supreme Court;
F. admonition by the commission with the consent of the judge, provided that an admonition may be used in subsequent *765 proceedings as evidence of prior misconduct solely upon the issue of the sanction to be imposed, pursuant to R. Jud. Conduct Comm. 10D(1); or
G. deferred discipline agreement.
[¶ 33] The "purpose of discipline in judicial conduct cases is not to punish a judge," but is to "preserv[e] the integrity of the judicial system and public confidence in the system and, when necessary, safeguard[] the bench and the public from those who are unfit." C. Gray, A Study of State Judicial Discipline Sanctions 3 (2002) ("Discipline Sanctions"); see also Cieminski, 270 N.W.2d at 326 (noting the aim of disciplinary proceedings "is to maintain the honor and dignity of the judiciary and the proper administration of justice"). Although a specific list of aggravating and mitigating factors for imposing sanctions are not codified, in Matter of Deming, 108 Wash.2d 82, 736 P.2d 639, 659 (1987), the court set forth a list of factors to consider in dealing with judicial misconduct:
To determine the appropriate sanction, we consider the following nonexclusive factors: (a) whether the misconduct is an isolated instance or evidenced a pattern of conduct; (b) the nature, extent and frequency of occurrence of the acts of misconduct; (c) whether the misconduct occurred in or out of the courtroom; (d) whether the misconduct occurred in the judge's official capacity or in his private life; (e) whether the judge has acknowledged or recognized that the acts occurred; (f) whether the judge has evidenced an effort to change or modify his conduct; (g) the length of service on the bench; (h) whether there have been prior complaints about this judge; (i) the effect the misconduct has upon the integrity of and respect for the judiciary; and (j) the extent to which the judge exploited his position to satisfy his personal desires.
The Deming factors have been adopted by a number of jurisdictions. See Discipline Sanctions, at 77. In Matter of Seaman, 133 N.J. 67, 627 A.2d 106, 123 (1993) (citations omitted), the court offered factors to consider in mitigation:
With respect to mitigating factors, we generally are mindful that a matter represents the first complaint against a judge, of the length and good quality of the judge's tenure in office, of exemplary personal and professional reputation, of sincere commitment to overcoming the fault, of remorse and attempts at apology or reparations to the victim. We have also found relevant consideration of whether a judge found guilty of misconduct will engage in similar misconduct in the future, or whether the inappropriate behavior is susceptible to modification.
[¶ 34] In circumstances somewhat similar to those in this case, other courts have imposed sanctions ranging from public censure to removal from office. See, e.g., In re Gordon, 13 Cal.4th 472, 53 Cal.Rptr.2d 788, 917 P.2d 627, 628 (1996) (holding public censure was appropriate sanction for judge who made sexually suggestive remarks to and asked sexually explicit questions of female staff members, referred to a staff member using crude and demeaning names and an ethnic slur, referred to a fellow jurist's physical attributes in a demeaning manner, and mailed sexually suggestive postcard to staff member addressed to her at courthouse); Fitch v. Commission on Judicial Performance, 9 Cal.4th 552, 37 Cal.Rptr.2d 581, 887 P.2d 937, 940 (1995) (holding public censure was appropriate sanction for judge who made offensive remarks to female court reporters or clerks concerning their physical attributes, offensive remarks to female attorneys regarding their intimate relationships with their spouses, offensive and crude *766 remarks in the presence of court staff, and singled out women working under his supervision for inappropriate and nonconsensual touching or attempted touching); In re McAllister, 646 So.2d 173, 178 (Fla.1994) (holding removal from office was appropriate sanction for judge who sexually harassed a judicial assistant, engaged in ex parte communications and abused public defender's office); Seaman, 627 A.2d at 124 (holding 60-day suspension without pay was appropriate sanction for judge who sexually harassed judicial clerk for a prolonged period of time); Matter of Collazo, 91 N.Y.2d 251, 668 N.Y.S.2d 997, 691 N.E.2d 1021, 1023 (1998) (holding removal from office was appropriate sanction for judge who made inappropriate remarks in the workplace to and about a female law intern and thereafter engaged in deceptive or deceitful behavior with respect to those incidents); Deming, 736 P.2d at 659 (holding removal from office was appropriate sanction for judge who used his position to attempt to enhance the position of a probation department employee with whom he was involved in a personal relationship and sexually harassed and intimidated women subject to his judicial authority).
[¶ 35] Judge McGuire's professional and personal conduct in this case was not egregious, but was crude and uncouth. It is the type of conduct that erodes the integrity of the judiciary sought to be preserved by the Code of Judicial Conduct. Judge McGuire's actions were repeated over a lengthy period of time and offended, shocked, and intimidated employees under his supervision. On the other hand, Judge McGuire has served the judiciary for more than 25 years and this is the first disciplinary action against him. He has voluntarily chosen to retire at the end of his term on December 31, 2004, rather than seek re-election, and has voluntarily moved to a different office on another floor of the courthouse to separate himself, as much as possible, from the complaining employee witnesses. He is undergoing sensitivity training. Under these circumstances, we accept in part the hearing panel's proposed sanction, but order that the suspension commence on November 1, 2004, and continue through the end of his term of office on December 31, 2004. Because this is a suspension and not a removal, we suspend the net income payable directly to Judge McGuire from his monthly compensation, but otherwise leave his benefits and established payroll deductions intact. We direct the Presiding Judge and Court Administrator to take appropriate action regarding the employment conditions of the witnesses in this proceeding.

C
[¶ 36] Judge McGuire argues he should not be assessed as part of the costs of these proceedings the $3,000.90 cost for the transcript of the hearing. He relies on R. Jud. Conduct Comm. 16C(5), which provides "[w]henever a transcript is requested by respondent, disciplinary counsel, a member of the hearing panel or the Supreme Court, a transcript of the hearing must be produced promptly and provided to the respondent without cost."
[¶ 37] Under R. Jud. Conduct Comm. 23C(3), "[t]he court may assess costs against the respondent if it finds the respondent committed misconduct." It has been the past practice of this Court to assess the costs of the transcripts of the hearings against judges who have committed misconduct. See Schirado, 364 N.W.2d at 56; Cieminski, 270 N.W.2d at 332, 335. Construing R. Jud. Conduct Comm. 16C(5) and 23C(3) together, we conclude a respondent is not initially responsible for payment of the cost of a hearing transcript in disciplinary proceedings, *767 but if the respondent is ultimately found to have committed misconduct, the cost of the hearing transcript may be assessed against the respondent. We conclude it is appropriate to assess the cost of the transcript against Judge McGuire.

IV
[¶ 38] We have reviewed the other issues raised by Judge McGuire and deem them to be either without merit or unnecessary to resolve in view of our disposition of this case. We suspend Judge McGuire from his position as district judge, without net pay, from November 1, 2004, through the end of his term of office on December 31, 2004, and assess against him the costs and attorney fees necessary for the prosecution of these proceedings in the amount of $12,675.64.
[¶ 39] GERALD W. VANDE WALLE, C.J., WILLIAM F. HODNY, S.J., CAROL RONNING KAPSNER, DALE V. SANDSTROM, and WILLIAM A. NEUMANN, JJ., concur.
[¶ 40] The Honorable WILLIAM F. HODNY, S.J., sitting in place of MARING, J., disqualified.